## SMITH VS. CLEVELAND and others.

The *mode* of levying, assessing and collecting taxes is entirely subject to the discretion of the legislature, limited by the constitutional provision which requires the rule of taxation to be uniform.

The legislature is competent to declare what part of the proceedings required by law in the collection of taxes upon land, shall or shall not be essential to the validity of the tax sale or tax deed; and therefore competent to declare that after the execution and recording of the deed it shall not be invalidated by any defects or irregularities in such proceedings, in case the land was subject to the taxes levied upon it, and they were not paid.

Where the tax deed was not by law to be given until three years after the tax sale, a provision declaring that it should not be invalidated by any irregularities in the proceedings, might be sustained as a statute of limitation.

Chap. 503, General Laws of 1852, declared (secs. 1 and 2) that a tax deed, executed by the proper officers and in the prescribed form, should be conclusive in all courts that the proceedings had been regular, from the valuation of the land up to the execution of the deed, and of the existence of all conditions precedent in any way affecting the validity of the deed, with certain exceptions there specified. Sec. 1, chap. 66, General Laws of 1854, re-enacted the above provisions, and declared that the title conveyed by any deed of land sold for the non-payment of taxes, should not be invalidated by any error previously made in assessing, listing, &c., said land, or in any other proceeding previous to the execution of the deed. Section 1, chap. 197, General Laws of 1859, declared that any deed executed prior to the passage of that act, upon the sale of any land for the non-payment of taxes, should be *prima facie* evidence only of the regularity of all proceedings, from the valuation of the land by the assessor up to the execution of the deed. *Held*, that this provision was invalid under sec. 12, Art. I of the constitution of this state, which prohibits the enactment of any law impairing the obligation of contracts.

A deed executed in November, 1858, of land sold for taxes in April, 1855, cannot be invalidated by showing that the town assessor neglected to add the word "assessor" to his signature to the certificate appended to the assessment roll; that the town treasurer, in his return of delinquent lands to the county treasurer, omitted to insert the year for which the taxes were unpaid, in a blank left for that purpose; that the return was not made until February 10th, though required to be made on or before the last Monday of January; that the county treasurer's affidavit of the posting of the statement and notice of sale, deposited in the office of the clerk of the board of supervisors, did not state the time and places of posting but merely that they were "posted up according to the statute;" or that the deed recites that the tax sale took place on the *twelfth* of April, while it appears, from the certificate of sale and from the notice to redeem, that it was made on the *eleventh*.

APPEAL from the Circuit Court for *Dane* County.

Action commenced June 20, 1862, against *Arnold Cleveland*,

*Elizabeth A. Porter*, and *Benajmin W. Porter*, her husband, to recover possession of land. *Cleveland* was in possession of the land as a tenant under said *Elizabeth*, who claimed under a tax sale made in April, 1855, upon which a deed had been issued to her in November, 1858, she being then a *feme sole.* On the trial, after the plaintiff had shown his chain of title, the defendants proved the maiden name of said *Elizabeth*, and her marriage with *Benjamin W. Porter*. They then introduced in evidence the tax deed above mentioned, which was in the form prescribed by the statute of 1854, and recited that the land was sold for taxes on the *twelfth* of April, 1855. The deed was executed November 27, 1858, and recorded on the 1st of December following. They also read in evidence the certificate of the sale of said land to the county of Dane, for the non-payment of taxes, with the assignment thereof to the defendant *Elizabeth*. The certificate stated that the land was sold on the *eleventh* of April, 1855. The plaintiff thereupon introduced evidence, which was received against the objection of the defendants, tending to show certain defects or irregularities in the tax proceedings upon which the defendants' title was based. The nature of these irregularities will sufficiently appear from the opinion of the court. There was some evidence, which it is not necessary to state here, as to the actual possession of the land during the three years next after the recording of the deed. The circuit court instructed the jury as follows: "1. The plaintiff has shown title to the premises, and is entitled to a verdict, unless it is defeated by the tax deed set up by the defendants. 2. If the tax deed is good, and all the prior proceedings regular, then the defendant is entitled to a verdict. But if the plaintiff has shown such defects in the proceedings prior to the deed, as to defeat the deed, then, unless the plaintiff is prohibited by the statute of limitations from maintaining this suit, he is entitled to your verdict; and I charge you that such defects have been shown as to defeat the deed. 3. The only act in force at the commence-

ment of this suit, limiting the time for bringing an action to recover land sold for taxes, was that of April 2, 1861, which requires the action to be brought within three years from the recording of the deed. That act, I think, should be construed to be prospective, and not to include time that had run before its passage as a part of the three years. 4. If, during any portion of the three years next after the recording of the tax deed, any party was in possession of the land adversely to the defendant, then the statute had not run." The defendants asked the following instructions, which were refused: "1. The tax deed given in evidence in this case is conclusive of the existence of all conditions precedent, affecting the validity of said deed, except that it is *prima facie* evidence only of the liability of the land described therein to taxation, and of the non-payment of the tax for which the same was sold, and of the non-redemption of said land after the sale; and as the plaintiff has given no evidence as to the payment of said tax or the redemption of said land after the sale, the jury must find for the defendants. 2. If you find from the evidence that the land in dispute was not in the actual possession of the plaint-iff at any time during the three years next after the recording of the tax deed, but was during all that time vacant and un-occupied, the present action is barred by the statute of limi-tation."

Verdict for the plaintiff; motion for a new trial overruled; and judgment upon the verdict.

*P. L. Spooner*, for appellants, cited secs. 1 and 2, chap. 503, Laws of 1852, and sec. 1, chap. 66, Laws of 1854, and argued: 1. That the provisions of those sections were constitutional. The legislature has power to declare that if the land is liable to the tax *levied upon it*, and the owner will not pay the tax before a sale, nor redeem the land within the time appointed, no omission or irregularity which may happen in the various steps which the officers charged with the execution of the revenue laws are directed to take, shall render the tax deed

void. Blackwell on Tax Titles, 100—112, and cases there cited and examined. These cases show that courts will construe such enactments strictly, and not extend their operation beyond the very words of the statute; but no cases are cited in which the power of the legislature to make the tax deed conclusive evidence of the regularity of previous proceedings as against a party who was *in default* for non-payment of a tax *legally levied* upon his land, is denied. Nor does Mr. Blackwell himself deny that the legislature has that power. On the contrary, he cites without criticism a number of cases in which that power has been recognized. Thus, in New York, where a statute declares that the comptroller's deed should be *conclusive* evidence of the regularity of the sale, the court held that the provision related solely to the auction and notice of sale, but that the deed was conclusive evidence as to the regularity of the sale. 2 Coms., 69; 2 Denio, 329; 2 Barb., 117; 1 Seld., 366. So where a statute in Pennsylvania declared that "no irregularity in the assessment shall be construed to affect the title of the purchaser, but the same shall be declared good and legal," the court held that, although the land was listed for taxation in a wrong county, the sale was valid (17 Pa. St., 42), and that where the assessors had neglected to sign the roll, the sale was valid. 9 Pa. St., 270. The same principle is recognized in 33 Maine, 76, in which the court held that a statute declaring that it should be sufficient for a party claiming under a tax deed to produce a certain amount of proof (less than would be required in the absence of the statute), applied not only to cases involving the validity of sales subsequent to the act, but prior sales' also, on the ground that the legislature had power to prescribe the evidence to be received and the effect of such evidence. In Ohio, under a statute passed in 1827, declaring that the title to be conveyed by a certain class of tax deeds, should not "be invalidated or affected by any error previously made in listing, taxing, selling or conveying the land," the court held that

such a tax deed raised a *conclusive* presumption that all the proceedings anterior to its execution were in strict conformity with the statute. They say "such is the law, and this court is bound to administer it." 18 Ohio, 400. See also *Stewart vs. Shoenfelt*, 13 Serg. & R., 360; *Hubley vs. Keyser*, 2 Pen. & W., 496; *Peters vs. Heasley*, 10 Watts, 209; *Frick vs. Sterrett*, 4 Watts & S., 271. But aside from the adjudged cases, and looking at it as a new question, what provision of the constitution or what principle of natural equity does such an enactment violate? It is nothing more than a declaration that if the owner of land will not pay the tax legally levied upon it, nor redeem it after sale within the time limited, the rules laid down to guide the officers in the various steps which they shall take in the assessment, return, advertising &c., shall be regarded as directory only. The legislature might, if they chose, dispense with all certificates and affidavits and advertisements—with everything except the legal levy of the tax, and the return of an assessment from which each property holder might learn, upon inquiry, what was his share of the public burden; and what they have power to dispense with, they have power to declare shall be regarded as directory only. 2. The statutes referred to *still* determine the force of the tax deed in this case. It will be contended that these statutes were, by implication, repealed by chap. 197, Laws of 1859, which declares that any deed executed prior to its passage upon the sale of any land for the non-payment of taxes, shall " be *prima facie* evidence only of the regularity of all proceedings," &c. But where a right has become vested, it is not within the scope of legislative power to divest it by a repeal of the statute under which it was acquired. Blackwell, 553, citing 2 Smith's Com., chap. 19. Inchoate rights derived under a statute are lost by its repeal, unless expressly saved. It is otherwise, however, in regard to such civil rights as have become so far perfected as to stand independent of the statute, or in other words,

such as have ceased to become executory and have become executed and vested. Blackwell, 555, citing 1 Hill, 324. In *Bruce vs. Schuyler*, 4 Gilm., 221, this doctrine was recognized as applying to a certificate given at a tax sale under a law which was said to have been repealed before the time for the execution of the deed. The court held that the sale by the county auditor was a contract, within the meaning of the constitution, and say : " Any act, therefore, which changes the expressed intention of the parties to a contract, or such as results from their stipulations, is held to impair its validity, and it is immaterial as to the extent or the manner of the change, whether it be ever so minute, or relates to its *construction*, its evidence or the time or manner of its performance, the conclusion is the same." In *Garrett vs. Wiggins*, 1 Scam., 335, where land had been sold for taxes under a law of 1827, and the tax deed was executed in 1831 after the repeal of the law under which the sale was had, and after the passage of a new law upon the subject, the court held that the law of 1827 must govern as to the effect of the deed. They held that the legislature did not intend that the law should have a retrospective operation, and add : "The auditor's sale constituted a contract between the state and the purchaser, which, in connection with the then existing law, determined the rights of the parties. A different rule would substitute the varying will of after legislatures for the intention and stipulations of the contracting parties." In *Robinson vs. Howe*, 13 Wis., 347, this court say that the purchaser at a tax sale "contracted for a deed of the kind which the law then authorized him to contract for," and although this was said with reference to an act passed after the sale, assuming to extend the time for redemption, the remark is equally applicable to the present case. Indeed this case is, if possible, a stronger one, for here the deed contracted for has been executed, and the purchaser had acquired a title which, under the law in force at its date, could not have been invalidated on account of any of the irregularities for which it is

now sought to be impeached. By the law as it then stood, the plaintiff could not have maintained this action. *Mrs. Porter's* title under the law was complete. It was not within the power of the legislature to restore to the plaintiff the title he had lost, or to deprive *Mrs. Porter* of the title which she had acquired. *Sprecker vs. Wakeley,* 11 Wis., 433 ; 14 How., 489 ; 2 Greenl., 275 ; 24 Me., 520. See also *Cornell vs. Hichens,* 11 Wis., 370. If this principle obtains where a title is gained under a statute of limitations, it applies *a fortiori* where the title is acquired under a contract. " It may be laid down as a general rule, that in determining the validity of a tax title, the case must be governed by the law as it stands at the time of the assessment and sale." Blackwell, 562, citing 25 Me., 359 ; 5 Lou. Ann., 380.

It seems quite immaterial whether the protection which we claim for *Mrs. Porter's* title is to rest upon the law of 1852 or on that of 1854. The difference between a provision that a tax deed shall be conclusive of the existence of certain conditions precedent, and a provision that the deed shall not be invalidated by proof of the non-existence of those conditions, seems to be one of form rather than of substance. The deed is equally secure from impeachment under the first provision as it is under the second, so long as the provision is enforced.

*Hopkins & Foote,* for respondent :

1. The tax deed was only *prima facie* evidence of the regularity of the proceedings before its execution. *Delaplaine v. Cook,* 8 Wis., 44 ; sec. 1, ch. 197, Laws of 1859. This section has changed the statute as it stood when *Delaplaine v. Cook* was decided. The statute of 1849 made the deed *prima facie* evidence of the regularity of the proceedings " from the valuation of the land by the assessor, *inclusive,*" &c. So also sec. 25, chap. 22, 1859. The amendment omits the word " inclusive." The use of that word in the previous statutes shows that the legislature understood that without it, it would be necessary to show a regular assessment ; and when the same

legislature, amending the provision, left that word out, it is to be presumed that they meant to effect a change, and to throw upon the holder of the tax deed the *onus* of showing a valid assessment. " From " is a word of exclusion, and means *after* the act or time mentioned, and does not include it. *Bigelow v. Willson*, 1 Pick., 485; *Portland Bank v. Maine Bank*, 11 Mass., 204; *Homan v. Liswell*, 6 Cow., 659; *Ex parte Dean*, 2 id., 605; *Jacobs v. Graham*, 1 Blackf., 392. The defendant, therefore, should have been compelled to show a regular valuation by the assessor *before* giving the deed in evidence. But the plaintiff showed that no assessment or valuation by an assessor was made. The paper purporting to be an assessment roll of the town in which the land in question lies, was given in evidence, and it appeared that the person whose signature was attached to it, did not state that he was assessor, or sign it as such. R. S. 1849, ch. 15, sec. 33. 2. The defendants by their own evidence showed that the deed was void. The deed recites that it was given for a sale of lands for taxes on the *twelfth* of April, 1855, and the defendants gave in evidence a certificate of the sale upon which they claimed that the deed was executed, and that stated that the land was sold on the *eleventh* of April. There was no deed for that sale, and there had been no sale at the time mentioned in the deed. 3. The several defects in the tax proceedings proven by the plaintiff, are sufficient to invalidate the deed. To this point counsel cited *Nelson v. Pierce*, 6 N. H., 194, 271; *Tidd v. Smith*, 3 id., 178; *Doe v. Switzer*, 2 Ind., 649; *Kelly v. Craig*, 5 Iredell, 129; *Brown v. Veazie*, 25 Me., 359; *Williams v. Peyton's Lessee*, 4 Wheat., 77; Blackwell on Tax Titles, 287 et seq.; *Minor v. Natchez*, 4 S. & M., 627; *Holt v. Hemphill*, 3 Ham., 232; *Bishop v. Lovan*, 4 B. Monroe, 116; *Garrett v. White*, 3 Ire. Eq., 131; 7 Hill, 177; 4 Denio, 71.

*By the Court*, DIXON, C. J. The sale for the unpaid taxes, the issuing and transfer of the certificate, and the execution

and recording of the deed under which the defendants claim title, all took place while the act of April 3, 1854 was in force. Laws of 1854, chap. 66. That act restored the act of April 19, 1852, which had been in part repealed by the act of March 31, 1853. Laws of 1852, chap. 503; Laws of 1853, chap. 57. The first and second sections of the act of April 19th declares that a tax deed executed by the proper officers, and in the prescribed form, should be conclusive in all courts that the proceedings had been regular, from the valuation of the land up to the execution of the deed, and of the existence of all conditions precedent in any way affecting the validity of said deed, except that it should be *prima facie* evidence only, first, of the liability of the land to taxation; second, of the non-payment of the tax for which the same was sold; and third, of the non-redemption of the land after sale and before the recording of the deed. The act of 1854 furthermore declared that the title conveyed by any deed of lands sold for the non-payment of taxes to the grantee therein, his heirs and assigns, should not be invalidated, or in any way affected or avoided by any error previously made in assessing, listing, taxing, selling or conveying said lands, or in any other proceeding previous to the execution and delivery of such deed.

The objections taken, and for which the plaintiff seeks to impeach the title of the defendants, go merely to the regularity of the proceedings. The groundwork and essence of the transactions which resulted in the execution and delivery of the deed remain untouched. The liability of the lands to taxation is not denied, nor that the taxes were unpaid. Neither is it claimed that there was any redemption. It is only shown that in some of the steps prescribed by the general law, the taxing officers failed to conform strictly to its requirements. The town assessor neglected to add the word "assessor" to his signature to the certificate appended to the assessment roll. The town treasurer, in his return of delinquent lands to the treas-

urer of the county, omitted to insert the year for which the taxes were unpaid, in a blank left for that purpose, though the year appeared in other parts of the return. The return was not made until the 10th day of February, instead of on or before the last Monday of January. The county treasurer's affidavit of the posting of the statement and notice of sale, deposited in the office of the clerk of the board of supervisors, does not state the time and places of posting, but that they were " posted up in accordance with the statute in such case made and provided." The deed recites that the sale took place on the *twelfth* day of April. It appears from the certificate that it was made on the *eleventh*. The notice to redeem followed the certificate, and declared that the premises would be subject to conveyance unless redeemed on or before the 11th day of April, three years from the time of the sale. These are the defects urged, and it is obvious that after the execution of the deed they were all cured by the statutes referred to, provided it was competent for the legislature so to enact, and of that we entertain no doubt. The existence of such power is fully established by the authorities cited by defendants' counsel, to which may be added the very able and satisfactory opinion of the district court for this state upon these same statutes, delivered some years since in the case of *Lord v. The Milwaukee & Mississippi Rail Road Company*, and published in pamphlet.

But aside from the sanctions of authority, the question seems very plain to us on principle. The only constitutional restraint is that requiring the rule of taxation to be uniform. In all other respects the power of the legislature is supreme. The machinery of taxation—the mode of levying, assessing and collecting—is subject entirely to its discretion. The liability to taxation and non-payment of the taxes being admitted, the legislature may, as to all other things, declare what shall or shall not be essential to the validity of the proceedings. The same power which imposes a duty may dispense with its performance. It may say that the proceeding shall be void for non-

performance, or that it shall nevertheless be valid. The difference is between mandatory and directory statutes. We take it to be clear that the legislature may, by express words, declare any statute regulating the form of a proceeding to be directory, that is, that the proceeding shall be válid although the prescribed form be not pursued. Such is, to some extent, the effect of the statutes before us. After the execution and recording of the tax deed, all defects and imperfections of this nature became immaterial. Let us take for instance the first irregularity specified, the omission of the assessor to add his name of office. The same legislative power which declared that he should sign as "assessor" might have dispensed with such addition, or with the entire signature. Having declared that he should sign officially, it might still say that his omission to do so should not vitiate the assessment. It could prescribe the precise effect which should be given to its own enactment. This is just what was done by the statutes in question. They were equivalent to an enactment in distinct phrase: "but after the execution and recording of the tax deed, the omission of the assessor to add his name of office shall not invalidate the assessment;" or, "this requirement shall be deemed directory." The same observations might be made of the neglect of the town treasurer to insert the year; of the affidavit of the posting of notices; and so on to the end of the list. The legislature might have fixed the time and provided for a sale without notice or advertisement. They may, surely, by proper legislation in advance, guard against errors and cure mistakes when notice is required.

But there is another ground upon which these enactments may, if possible, with more safety be rested, and that is the power of the legislature to pass statutes of limitation, which no one denies. The legislature did not attempt to declare absolutely that such errors and imperfections should not at any time be inquired into, but only after the execution of the deed. The deed could not be executed until after the expiration of

three years from the day of sale. In the meantime every question was open to investigation. The acts were, therefore, valid as statutes of limitation.

Another question grows out of the repeal of these acts and a subsequent enactment by which the legislature endeavored to open the door of investigation to every question pertaining to the proceeding. The repeal took place on the first day of January, 1859. R. S., ch. 191, sec. 1. Section two, however, declares that the repeal of the acts mentioned in the preceding section shall not affect any act done or right accrued or established; but every such act or right shall remain as valid and effectual as if the provision so repealed had remained in full force. So far, therefore, the rights of the defendants were not affected, provided it was in the power of the legislature to affect them. But on the 19th day of March following, an act was passed, the first section of which declares that any deed executed prior to its passage, upon the sale of any land for the non-payment of taxes, shall be *prima facie* evidence only of the regularity of all proceedings requisite to the legal and effectual execution thereof, from the valuation of the land by the assessor, up to the execution of such deed. Laws of 1859, chap. 197. This section appears not to have been repealed, though section two has been. Laws of 1861, chap. 24. A similar *prima facie* effect as evidence is given to deeds executed under the law now in force concerning the sale of lands for taxes. Laws of 1859, Chap. 22, Sec. 25. It is now claimed, under the operation of these last acts, that the deed before us is but *prima facie* evidence; that the conclusive effect ascribed to it by the law in force at the time of its execution, departed with the repeal of that law and the passage of the act of March 19, 1859. The question is not a new one. Similar ones have frequently arisen before this court, and several in connection with this very subject of taxation. The second section of the same act, March 19th, 1859, has been held unconstitutional and void. The legislature has no power to im-

pair vested rights of property acquired by virtue of a tax deed, by renewing the remedy once barred under a statute of limitation. *Sprecker vs. Wakeley*, 11 Wis., 432; *Hill vs. Krieke*, id., 442; *Knox vs. Cleveland*, 13 Wis., 245. The period of redemption fixed by law at the time of the sale of lands for taxes cannot be extended by a subsequent act of the legislature, as against the holder of the certificate or his assigns, although such act be passed before the expiration of the period so fixed. *Robinson vs. Howe*, 13 Wis., 341. In this case it was said that the distinction between those . laws which the legislature can modify or repeal without impairing the obligation of contracts and those which it cannot, lies between such laws as confer rights or impose obligations upon persons in certain relations, in carrying out some view of legislative policy, and independently of any stipulations which the parties may have made, and such as are authorized to be made the subject of express contract between the parties. Under the former, the rights being derived entirely from the law, and not from the contract, laws changing them are not within the prohibition of the constitution. But under the latter, the right being acquired by virtue of the contract, though under the authority of the law, the constitution protects them from interference by the legislature. In *Streubel vs. The Mil. & Miss. R. R. Co.*, 12 Wis., 74, it was said that where contracts are regulated by law, the parties are presumed to have acted with reference to the law, to have consented to such conditions as it imposed, and to have acquired such rights as it gave. Their acts are to be interpreted by the law. And in *Cornell vs. Hichens*, 11 Wis., 353, we held that the legislature could not affect the obligation of a previously executed contract, either by changing the rules of pleading or the laws of evidence, but that such obligation must be determined by the law in force at the time it was incurred. And this we think to be the sound rule upon the subject, that whatever the parties are authorized to and do stipulate for at the time f making the contract, or

Smith vs. Cleveland et al.

whatever provisions of law are then in force regulating the contract, either as to its construction or legal effect, or materially advantageous to one party or disadvantageous to the other, as to all such the legislature has no power afterwards to interfere to change or modify the rights and relations thereby established. The deed in question was executed on the 27th of November, and recorded on the 1st of December, 1858. At that time the title of the purchaser was valid and absolute as against the irregularities now urged, and remained so until the 19th day of March, 1859. Courts of justice must so have decided had the case then arisen. This was a most material and important advantage to the purchaser, and could not have escaped his attention. It concerned the life and validity of the contract. Could the legislature afterwards step in and take it away, and thus remove the foundation of his right? Can the legislature say, as to contracts past and executed, that they shall mean one thing to-day and another to-morrow? That they shall have one construction or effect at the time of execution, and another afterwards? That the title of the purchaser by deed at first indefeasible shall afterwards be defeasible? If these things can be done, then certainly the protection afforded by the constitution to private rights is very slight and inadequate. But, as has already been often decided, the legislature is deprived of this power. The construction and effect given by law to a contract at the time of its execution inhere in and continue a part of it ever after, so that no future legislature can impair the obligations or divest the rights thus created. By this rule, then, the claims of the respective parties must be judged. They must stand or fall by the law as it existed at the time of the execution and recording of the tax deed.

Judgment reversed, and cause remanded for further proceedings according to law.

NOTE.—At the suggestion of the Chief Justice, the following paragraphs are here reprinted from the opinion of Judge MILLER, of the United States court for the

district of Wisconsin, in the case of *Lord vs. the Milwaukee & Mississippi Railroad Company*. After citing the provisions of the acts of April 19, 1862, March 31, 1853, and March 31, 1854, respectively, the court proceeds:

" By the act of 1852, under which the sale of this lot was made, the deed is conclusive in all courts that the proceedings have been regular, from the valuation of the land up to the execution of the deed; and also of the existence of all conditions precedent in any way affecting its validity. And there is only left to the owner of the land the right to contest its liability to taxation; to prove the payment of the taxes for which the land has been sold; and to prove the redemption of the land, after the sale, and before the recording of the deed. All defense against a deed is cut off, excepting in these three particulars, in regard to which the purchaser, by the deed, acquires but a contingent title, liable to be defeated by proof of any one of them. If the land described in the deed was the property of the United States at the time of the assessment, the whole proceeding and deed would be void.

"The power of taxation resides in the government, as a part of itself; it is granted by all, for the mutual benefit of all; and it operates on all the persons and property in the state. The predominant policy of the legislature, in passing the act of April 19, 1852, is to secure the collection of revenue for public uses. The precise directions given in the law, as to the mode of assessing, advertising and selling, and all other things prescribed to be done by the public officers, should yet be followed strictly and substantially, although they are but directory. As the system was carried on by various officers, changed frequently by public election, and not always conversant with the necessary modes of carrying on complicated plans of taxation and sale, or sufficiently cautious to do it accurately, it was seen that these directions were not strictly pursued, and that loose, irregular and defective methods had been fallen upon in practice. It was determined therefore by the legislature, to consider the provisions of the law as directory merely, and to protect the purchaser against the neglects, imperfections and malfeasance of public officers. The act therefore prescribes, in strong terms, that the deed shall be conclusive in the hands of the grantee as to all things in their character directory. While the door was open for the legal owner to contest the proceedings, they were considered essential; and the courts, in their decisions, were reduced to the necessity of overruling the tax title merely on account of some slight irregularity or deviation from the terms of the law. From this they are relieved by the overruling and sweeping provisions of the act of April, 1852. Many hard cases, no doubt, will occur under this law; but it is considered, by the representatives of the people, expedient that individual loss should be submitted to in order to carry out a measure of public policy. If the owner will not exercise the ordinary vigilance required by law in paying his taxes, or in redeeming his land within the time allowed, he neglects a duty at the peril of having it applied for the purpose of defraying the expenses of government. Every person, whether resident or non-resident, who owns land located in this state, knows that it is subject to taxation, and to sale for the payment of taxes annually assessed. He is presumed to know the times prescribed by law for the sale of his land and for its redemption, and also the conditions of the sale and the effects of non-redemption. Ignorance of the law should not in this matter excuse a man. The legislature has, after much imperfect legislation, adopted the wise policy of requiring the owners of lands to pay the taxes annually assessed thereon, and thereby contribute punctu-

Smith vs. Cleveland et al.

ally to the support of government. Land is wisely made the debtor of the taxes, and subject to a statute lien, to be extinguished by a summary proceeding *in rem*, whereby the title of the owner is divested upon neglect to redeem, after the long time allowed by law for that purpose. A due regard to the interests of the tax paying citizens, and to the improvement of the state, required the enactment of the law; and courts should enforce it, as to sales made subsequent to its publication.

"The law of Pennsylvania provides that 'no alleged irregularity in the assessments, or in the process, or otherwise, shall affect the title of the purchaser; but the same shall be declared to be good and legal.' In that state, taxes are a lien only on unseated or vacant lands and lots; and such only can be sold by the treasurer. The courts of that state have enforced that statute provision with such uniformity of construction that a treasurer's deed of lands not redeemed is considered an undoubted muniment of title. In *Stewart vs. Shoenfelt*, 13 Serg. & Rawle, 360, it is decided that the assessor of one township has no right to assess lands lying in another township; but if he does so, and the land is sold for payment of the taxes, the sale is not void, and the purchaser is protected. In *Thompson vs. Brackinridge*, 14 S. & R., 346, it is decided that the omission of the notice of sale required by the law does not vitiate the deed. The court says: 'Returning periods of sale are fixed by the law, and owners are therefore apprized by the law itself that their lands will be sold at the regular period if the taxes are not paid.' In *Hubley vs. Keyser*, 2 Penn. Reports, 496, the court says: 'The object of the law was to make the sale for taxes and treasurer's deed confer a title, without proof of any one prerequisite, except that the land was vacant, and that a tax was charged, regularly or irregularly, that the tax was unpaid, and that the land was sold and not redeemed.' In *Strauch vs. Shoemaker*, 1 Watts & Sergeant, 166, it is decided that when vacant land is sold for the payment of taxes, the title of the real owner, whatever it may be, passes to the purchaser, whether it be assessed and sold in his name or that of a stranger; and whether the person in whose name it is taxed has or has not any title. And in *Fager vs. Campbell*, 5 Watts, 288, the court says: 'The land itself, and not the owner of it, is the debtor for the public charge; and it is therefore immaterial, at the moment of sale, what may be the state of the ownership, or how many derivative interests may have been carved out of it. With these the public have no concern. They are sold with the land, just as a remainder would be sold with a particular estate.' And in *Frick vs. Sterrett*, 4 Watt & Serg., 269, the court ruled, that the act on the subject of the sale of vacant lands for the payment of taxes, was designed to give effect to the title, without regard to irregularities in the mode of assessment or sale.

"On the subject of redemption under the law, the court, in *Orr vs. Cunningham*, id., 294, ruled that the right to redeem is exclusively in the owner: but if the land be actually redeemed by another, it will enure to the benefit of the owner, and vest no title in him who redeemed it, although he may have been a claimant of the land at the time. In *Laird vs. Heister*, 12 Harris (24 Pa. St.), 452, the court say 'When the owner of land goes to the treasurer and offers to pay him all the taxes upon it, and does pay him the amount demanded, and the treasurer credits the payment to another tract and sells this, it is a good payment and the sale is void. The unseated land laws are intended to enforce the payment of taxes, and their purpose

is fulfilled when the duty is performed. If a man has actually and in good faith performed his duty to the satisfaction of the proper officers, his land is safe. If it be sold after that, it is through the error of some officer, which cannot be visited on the owner ; for the state does not mean that the owners shall warrant the fidelity or competency of its officers. The sale involves an assertion by the treasurer that the taxes are unpaid, and the purchaser relies on this or on his own investigations, and his title depends upon its truth.' And in the case of limitation, the same court, in *Burd's Ex'rs vs. Patterson,* 10 Harris (22 Pa. St.), 219, decided that the owner was barred, though his agent had been informed by the treasurer, before the sale, that the taxes on his lands had been paid. There was no offer to pay the taxes; and where either the owner or the purchaser must suffer, the loss should fall on the former, who neglected to pay his taxes. The supreme court of the United States, in *Dubois vs. Hepburn,* 10 Peters, 1, which was a case involving the right to redeem under the Pennsylvania statute, says : 'A law authorizing a redemption of land, so sold, ought to receive a benign construction in favor of those whose estates will be otherwise divested.'

"I have referred to these few cases, selected from many on the same subject, to show how a law similar to the act of April, 1852, has been enforced, and the principles on which it is administered. The law of Pennsylvania has been in force forty-two years, and I am not aware of a case wherein its constitutionality is doubted by the courts. In my opinion, the legislature of Wisconsin had the same constitutional power to pass the act of April, 1852, making a recorded tax deed conclusive in regard to errors of officers in levying taxes and selling lands for their payment, as to declare by law that no suit or proceeding for the recovery of lands sold for taxes shall be commenced after three years from the time of recording the deed.

"In all cases, it is the duty of the court to enforce the constitutional laws of the state ; particularly those that regulate and control the titles to property. In conformity with this principle, I have decided, in this case, that under the law in pursuance of which the sale for taxes assessed in the year 1848 was made, the deed, being but *prima facie* evidence of the regularity of the proceedings, is void for want of a lawful notice of redemption. And as, by the law of April 19, 1852, 'deeds shall be conclusive in all courts that the proceedings have been regular, from the valuation of the land up to the execution of the deed, and of the existence of all conditions precedent in any way affecting the validity of the deed,' with the exceptions mentioned, I now decide that the prescribed notice of redemption is merely directory, and that a deed made in pursuance of a sale under this law is conclusive ; and the court is not to inquire whether the notice of redemption was regular or not.

"The design of the act of April, 1852, is to place tax deeds, in regard to their conclusiveness, on an equality, as nearly as may be, with deeds of lands sold under execution by sheriffs. The legislature has power to create liens upon lands by mortgage and judgment, and also a paramount lien by taxation. And it can constitutionally provide for the extinguishment of those liens by sale of the incumbered premises and transfer of the title to the purchaser. In either case there is a proceeding according to law, sufficient to divest the owner of his title, and to protect the purchaser against irregularities or errors of officers.

"The court, seeing the law of April, 1852, upon the statute book, and recognizing

it to be a law in relation to titles to property, will enforce it. And this deed, being made in confirmation of a sale under that law, and recorded, is to be received in evidence as a muniment of the plaintiff's title; provided the execution is correct, and the title to the land be shown out of the United States. To enable a plaintiff in ejectment to recover on a tax deed, it must be shown that the land was sold by the United States before it was taxed; but it is not necessary that a patent should have issued. *Carroll vs. Stafford*, 3 Howard, 441; *Crum vs. Burke*, 1 Casey (25 Pa. St.), 377."