| 32 | 131 |
|----|-----|
| 55 | 84 |
| 55 | 198 |
| 32 | 131 |
| 57 | 527 |
| 32 | 131 |
| 59 | 465 |
| 32 | 131 |
| 60 | 611 |
| 32 | 131 |
| 61 | 41 |
| 61 | 43 |
| 32 | 131 |
| 65 | 602 |
| 32 | 131 |
| 66 | 542 |
| 32 | 131 |
| 72 | 31 |
| 32 | 131 |
| f89 | 471 |

## CAIRO AND FULTON RAILROAD COMPANY VS. PARKS.

1. PLEADING: *Evidence; Exhibits.*
   In an action of ejectment based upon a tax deed, which was made an exhibit to the complaint, the defendant pleaded that the tax sale was invalid. Held, upon demurrer to the answer, that the question as to the conclusiveness of the tax deed, could only be raised at the trial of the issues of fact made by the pleadings; that the tax deed, though referred to in the complaint, as an exhibit, did not become a part of the pleading.

2. ———: *Code Practice.*
   Under the Code practice, each paragraph of an answer, takes the place of so many pleas under the common law form of proceeding, and must present facts sufficient to bar a recovery.

3. ———:
   A demurrer to several paragraphs of an answer, unless separate to each, should be overruled, if either paragraph is good.

4. TAXATION: *Pleading exemption from.*
   The party alleging the exemption of his land from taxes, must show in his pleading, the facts that exempt them.

5. PLEADING: *Practice under the Code.*
   When a good defense is defectively stated, the proper practice under the Code, is to move the court to require the pleader to state his defense more fully.

6. SPECIAL SCHOOL TAXES: *Jurisdiction of the County Court to levy.*
   The County Court had no power under the act of March 25th, 1871, to levy taxes for special school purposes, unless the voters of the district had in a district meeting, voted the amount to be raised, or the trustee of the district had reported to the court an estimate of the amount to be levied.

7. STATUTES: *Constitutionality of.*
   The legislature is only limited by constitutional restrictions, and its acts will not be declared unconstitutional by the courts, unless clearly so.

Cairo and Fulton R. R. Co. vs. Parks.

8. ————: *Recitals in Tax Deeds not conclusive.*

The legislature has no power to make recitals in tax deeds conclusive evidence of the facts recited.

9. TAXATION: *What railroad lands exempt from.*

Under the act of April 8th, 1869, lands acquired by grant, donation or subscription, in aid of the construction of a rail road, were exempt from taxation until conveyed to an actual purchaser.

10. PARTIES: *Husband and wife.*

A wife can sue alone, in her own name, for recovery of her land.

11. LIMITATION:. *When Statute on Tax Sales begins to run.*

The statute of limitations does not begin to run in any case, until there is a complete and present cause of action, and the act of 25th March, 1871, limiting actions to avoid tax sales to two years, begins to run from the expiration of the time allowed for redemption, and not from the date of sale.

APPEAL from *Lafayette* Circuit Court.

Hon. JAMES K. YOUNG, Circuit Judge.

*J. M. Moore,* for appellant.

*Williams & Battle and Cook, contra.*

WALKER, J.:

Mattie D. Parks brought her action in ejectment in the Circuit Court of Lafayette County, against the Cairo and Fulton Railroad Company, and others, (claimants in possession) for the recovery of the southwest fractional quarter of section thirty, in township fifteen south, of range twenty-eight west, situate in then Lafayette, now Miller County, Arkansas.

The complaint contains two counts; in the first of which, title is set up under a tax sale. All of the statute requirements are recited, from the assessment of the land to the consummation of title in the assignee of the purchaser by deed, and by deed from the assignee to plaintiff, who avers that she is the legal owner, and that the defendants are in possession without right.

The second count, without reference to the source from whence

plaintiff derived title, asserts a legal title to the land, and possession in defendant without right.

The two counts, it will be seen, present but one cause of action.

The defendants answered the complaint in four distinct paragraphs or pleas; to which the plaintiff interposed a general demurrer, not severally to each, but jointly to all of them, without assigning any grounds as special cause for demurrer. The demurrer was sustained by the court, and a final judgment rendered in favor of plaintiff, from which the defendants have appealed.

The correctness of the decision of the court, in holding the answer insufficient, presents the most material question for our consideration, which is, was the answer sufficient in law to bar the plaintiff's recovery.

The counsel for plaintiff have taken a wide range in their discussion of the questions of law thus presented, and have argued the case as they should, if the admissibility of evidence was presented for our consideration.

No such question is presented, or can arise upon a question as to the sufficiency of the pleading, in the determination of which, the court looks alone to the sufficiency of the complaint as a cause of action, and to the answer, as to whether it presents in law, a bar to the recovery sought.

The issue thus formed, is to be determined by evidence. Neither the complaint nor the answer is to be taken as evidence of the facts upon which the questions of legal rights are presented. There cannot be (as we suppose the counsel to assume) a conclusive statement of facts in a declaration, such, as could not be controverted, because if such was the case, there would be nothing to controvert, nothing put at issue, nothing to prove; and so too, the answer to the declaration need only present such facts, as if sustained by evidence, will in law, bar recovery.

Counsel are mistaken in supposing that the deed, though referred to as an exhibit, thereby becomes part of the pleadings; such is not the case. *Stillwell and wife* v. *Adams*, exr., 29, Ark., 346; or, if it was part of the pleadings, it could have no such conclusive effect, as to deny to the defendant, the right to put the truth of the allegation in issue. Whatever its conclusiveness as evidence may be upon a trial of the issue of title, we are not now to consider; the question before us is, are the facts set up in the several paragraphs, or either of them, sufficient in law to bar the plaintiff's recovery?

Under the Code practice, each paragraph, or plea, takes the place of as many pleas, under the common law form of proceeding; Gantt's Dig., sec. 4569; *Newman* v. *Rogers*, 29 Ark., 365; and must present such facts as, if true, will bar a recovery. Unless demurred to separately, if any one of them should be found good, the demurrer should be overruled, because if presented as an entirety, the proposition must stand or fall as such. So, in the case of *Archer* v. *National Insurance Company*, 2 Bush, 226, it was held, "that the pleader must stand upon his general proposition, and the court must pass upon it as an entirety, and cannot overrule the demurrer as to one paragraph of the answer and sustain it as to another," and such too, is the rule established by this court, in the case of *Bruce* v. *Benedict*, 31 Ark., 305, and *Goodwin* v. *Robinson*, 30 Ark., 535.

The land in controversy, was assessed as the property of an "unknown owner," but is conceded to have been the property of the Cairo and Fulton Railroad Company.

Defendants, in the first paragraph of their answer, deny that the land was, on the 1st day of January, 1870, (the time when it was assessed), or at any time since, has been subject to taxation; deny that the collector of said county furnished the county clerk a list of the real estate situate in said county, upon which

the taxes had not been paid, or that it was advertised by the county clerk as alleged ; they also deny that the plaintiff is the owner of the land, or entitled to the possession of it ; or that the same is held by them without right.

These were all denials of the truth of the affirmative allegations in the complaint; that which averred that the land was liable to taxation, was essentially necessary to the validity of the sale, and its denial formed a material issue, because unless the land was subject to taxation, no sale of it for the payment of taxes could be made.

It devolved upon the defendant, who set up this exemption, to show that it existed.

All lands within the State, with the title to which the United States government has parted, are, by law, subject to taxation. No proof was required of the plaintiff to establish this, but he who claims that the land is exempt from taxation must, in his pleading, state such facts as will in law, exempt the land from the general law, which subjects all lands to taxation, not specially exempted—such for instance, as that the lands had been set apart as a site for a church, a school house, or had been exempted under a railway franchise, or other purpose of public benefit.

It was not sufficient to state, that the land was exempt from taxation, without stating also, the facts which are relied upon as constituting such exemption. In this respect the paragraph was defective, and under the common law practice would have been demurable. It was a good defense defectively stated, and when such is the case, the proper practice under the Code system, is to move the court to require the party pleading, to state his defense fully.

Sec. 4564, Gantt's Dig., provides, "that the defendant may demur, when it appears on the face of the complaint that it does not state facts sufficient to constitute a cause of action."

Sec. 4618, provides: That "when the allegations of a pleading are so indefinite, or uncertain, that the precise nature of the claim or defense is not apparent, the court may require the pleading to be made definite and certain by amendment." *Ball et al.* v. *Fulton County*, 31. Ark., 379; *Bushey* v. *Reynolds*, 31 Ark., 657; Pomeroy's Code Practice, 548; Newman's Code Practice, 675.

This rule accords with the liberal system of amendments which disregards technical objections, and requires the party in a brief and concise manner, to state truly his cause of action or defense.

If the demurrer had stated the ground of objection to the answer specially, the question might have been settled by giving leave to withdraw the demurrer and plead over. The judgment upon the demurrer would put the party to a small additional expense, but with this exception there would be but little difference, between presenting a motion to require the party pleading, to state the grounds of defense more fully, and demurring specially; but if the cause of demurrer be such, as by no form of pleading it would be good, the leave would be unavailing, and the facts set forth upon motion, if not sufficient, would be demurrable; without reference to which is the best manner of reaching the defect, it may suffice to say, that we must be governed by the Code practice, as settled by our decisions, and the writers upon the subject.

The decision of the court below, in sustaining the demurrer, must be reversed and set aside, and leave given the plaintiff, if he choose to do so, to have the plea made definite and certain, by setting out the facts which constitute the exemption.

The second ground of defense is, that three mills on the dollar were assessed upon defendant's lands for the maintenance of public schools, and two mills on the dollar for building a

school house, which was unauthorized by law, and void; because neither the rate so levied, nor any other rate was determined on for said year, by the qualified electors of the school district in which the land is situated; and that no estimate was made by the trustee of said district, of the necessary amount to be levied for the support and maintenance of schools in said district, during the year 1871, or certified by the chairman of the school meeting to the Clerk of the County Court, or laid before the County Court."

This is the defendant's answer, which, if true, as it is admitted to be by the demurrer, presents the issue of law which we are called upon to determine.

The precise question is, was the property of the defendant sold without having been first assessed? To determine which we are called upon to say, whether the County Court had power to levy a special tax for school purposes, or for building a school house without the consent of the voters of the district so taxed.

The defendant avers, that the court, in making such levy, acted without the consent of a majority of the qualified electors of the school district, without which the court had no jurisdicdiction of the case, nothing upon which to execute its judgment.

A school district is a local municipal corporation, vested with certain limited powers, conferred upon it for educational purposes, within its corporate limits; corporate power is conferred upon the qualified electors of the district, who organize by the election of officers, vested with power to establish schools, erect school houses, employ teachers, limit the time the school shall be taught, and when, in addition to the sum distributed out of the common fund, a majority of the electors, after due notice of the purpose of the meeting, may, if deemed expedient or necessary, vote a special tax upon the property of the district, to aid

in defraying the expenses of building a school house, or for paying the expenses of the school for such time as they may choose.

Thus, in sec. 20 of the common school law, it is provided, that "the electors of any school district shall, when assembled in school district meeting, have power by a majority vote cast * * * to designate a site for a school house, and determine the length of time for which the school may be taught more than three months in the year; to determine what amount of money shall be raised by a tax on the property of the district to defray the expenses of a school for three months, or, for a greater length of time they may decide to have a school."

Sec. 21, provides, "that the County Court shall levy all taxes voted for school purposes, at the district school meeting."

Sec. 31, requires the trustee of the school district to submit a report to the electors, at the school meeting, with an estimate of the cost of the school.

Sec. 32. If the district school at their annual meeting, fail to provide for a school to be taught at least three months during the year, the trustee shall immediately forward to the Clerk of the County, an estimate for the necessary expenses for a school for three months, after deducting the probable amount of the school fund revenue to be apportioned to the district, and a tax shall be levied, etc.

Sec. 40. "It is made the duty of the trustee, to report to the County Clerk, the amount voted as a special school tax, attested by the chairman of the meeting."

Such were the statute requirements up to March 25th, 1871, which restricted the powers of the County Court, in making the levy for special school purposes, and conferred the power exclusively upon the voters of the school district, and in the event, that they failed to vote to levy a tax, decreed to the trustee

Cairo and Fulton R. R. Co. vs. Parks.

power to report to the court, an estimate of the necessary amount to be levied.

The Act of 1871, reads as follows: "It shall be unlawful for the County Court of any county in this State, unless expressly authorized by some Act of the General Assembly, to levy on the taxable property of said county in any one year, a greater per centum, than is hereinafter authorized," (fixing the maximum to be levied for various purposes); and then proceeds: " For the support and maintenance of public schools, in any school district in such county, such rate as may be determined by the qualified electors in such district, in the manner prescribed by law, not to exceed five mills on the dollar."

In view of these several statutes, which authorize the levy of a special tax for school purposes, a very different question is presented from that where a tax is levied by law for purposes of general or State taxes to support the county or state administration; a special tax not imposed by legislative authority, but a voluntary, self imposed tax by the electors of a school district, who are made the exclusive judges of the necessity for levying a tax, and as to the amount to be assessed. There is no tax to be assessed by law, for such purpose; consequently the court has no power under the law to make an assessment, because that is to be determined by a majority vote of the electors of the district, and without which no levy can be made. It is true, that the court is the proper tribunal to make the levy when a self imposed assessment is made by the voters of the district, and certified to the court; until this is done, the power is dormant, not called into exercise, because there is nothing before it to act upon. Because the Circuit Court has jurisdiction over matters of contract for $1000, it by no means follows that it may render a judgment for $1000, without a writ and declaration bringing the subject matter and the parties before it, without which no

valid judgment could be rendered; nor that a sale under execution issued upon such judgment, regular in form, and duly levied upon property and sold, vest in the purchaser title to it; because, however the officer to whom the writ was directed, and by whom executed, might justify himself against an action for trespass, the purchaser would have to show a valid judgment and execution; to do which, he should show a declaration and writ, or an appearance, which would supercede the necessity of a writ, without which there could be no valid judgment; and if such would be necessary to show jurisdiction in a court of general jurisdiction, how much more necessary would it be in an administrative proceeding, in which the facts upon which jurisdiction depends, must always be shown by one who asserts a claim under its exercise.

Suppose upon a plea of *nul tiel record*, a copy of the records of the County Court should be produced without showing that an assessment had been made by the electors of the school district, and returned before the court; the record would not be received as evidence of anything, and if not, then there was no assessment, no levy, and consequently no power to sell.

And thus we are brought to consider the next question, which is the effect to be given to the act, which declares a conclusive effect to the recitals in the tax deed. Put the question in its broadest terms, and concede that the legislature did intend to preclude all investigation of the truth of the recitals in the deed; can this be done?

At the outset of the investigation of this question, it may be as well to concede that the legislature, as a co-ordinate branch of the government, is like all of the other departments, only limited by constitutional restrictions, and resting under the same obligations as the judiciary department, will not be declared by the judiciary to have transcended its constitutional limits, unless such is clearly the case.

Before, however, proceeding to the discussion of constitutional power, it may be profitable to review our former statutes, and the decisions of this court upon them.

At an early period of the State government, it was deemed of importance by the legislature to enact a statute, intended to give validity to tax titles, by changing the common law rule, which required of the claimant under a tax deed, to prove that all of the statute requirements in effecting the sale should be proven, in order to give validity to his deed. To effect which it was provided, Gould's Dig., ch. 148, sec. 130, that "the deed made by the collector, shall vest in the purchaser a good and valid title, both in law and equity, and shall be received in evidence in all of the courts of the State, as a good and valid title."

Sec. 131. "No exception shall be taken to any deed made by the collector for lands sold for the payment of taxes, but such as apply to the real merits of the case, and are consistent with a fair interpretation of the intention of the General Assembly."

The construction given to this statute in a series of decisions of this court, made the recitals in the deed only *prima facia* evidence of the truth of the facts recited, and in several of them distinguished between such acts as were necessary to confer upon the officer, power to sell, and such as related to the exercise of the power in its performance. *Hogins* v. *Brashears*, 13 Ark., 242; *Merrick* v. *Fenno & Hutt*, 15 Ark., 331; *Patrick* v. *Davis*, Ib., 363; *Pillow* v. *Roberts*, 13 Howard, 470; decided upon appeal from this court.

The act of March 25th, 1871, sec. 125, is substantially a re-enactment of these statutes, with the exception that it makes the recitals conclusive evidence of the truth of the recitals in the deed, with certain exceptions.

When we consider the two acts of the legislature, the latter made after the Supreme Court had given to the former act, only

a *prima facia* effect, so as to change the *onus probandi* from the party claiming title under the deed, to the party who seeks to assert it, we must believe that the act of 1871, was intended by legislative declaration to make the recitals in the deed conclusive, not merely *prima facia*.

It may be well to remark that, while this court has never been required to pass directly upon the conclusive effect of the act of 1871, we have upon several occasions, where the validity of a collector's deed has been brought under consideration, adhered to the same rule of construction as that applied to the former statute.

Thus, in the case of *Bettison* v. *Budd*, 21 Ark., 378, it was held, that "an assessment of the land is essential to the validity of a sale made for the payment of taxes, without which, there can be no charge upon the land; there must be a levy, or the collector's deed is invalid."

In *Thweat, et al.,* v. *Black, ex'r, etc.,* 30 Ark., 732; held, "that the tax deed appearing to be regular, its recitals must be taken as true, unless disproved by competent evidence."

In *Kinsworthy, et al.,* v. *Mitchell and wife,* 21 Ark., 145; held, "that where land is assessed for several years' taxes, and the taxes for one or more have been paid, if the land is sold for the whole of the taxes the sale is void."

In *Vaughan* v. *Bowie, et al.,* 30 Ark., 278, it was held, that a levy of a greater amount for special school tax than is allowed by law, is void.

In *Greedup, et al.,* v. *Franklin County, et al.,* 30 Ark., 101; held, "that the County Court could not levy a greater amount of taxes for county purposes, than the maximum allowed by law. If there is no county indebtedness, there can be no levy to pay it."

Cairo and Fulton R. R. Co. vs. Parks.

In *Spain* v. *Johnson et al.,* 31 Ark., 314 ; held, "that a tax deed must show for what year the land was assessed, that the lands were assessed separately and for the sum assessed on each, and that if sold together, the sale is illegal and void."

In *Peters & Glen* v. *Wallace et al.,* 29 Ark., 476, and *Montgomery* v. *Birge,* 31 Ark., 491 ; held, "that a tax deed, which recites the sale of several tracts of land *en masse* for a gross sum, is void."

A sale for a larger penalty than the law imposes, is void. 29 Ark., 489.

Without reference to the particular state of case under which these decisions were made, it will be seen that in none of them have they given to the recitals in the deed a conclusive effect as evidence ; but have held the deed as only *prima facia* evidence of the truth of the recitals, and if there is wanting the necessary recitals to show *prima facia,* a compliance with the requirements of the statute in order to give power to sell, or which are in other respects essential to protect the rights of the tax payer, the sale is held to be illegal, and no title passes to the purchaser under such sale.

Many of these decisions were made under proceedings which arose since the passage of the act of 1871, and if the construction be given to this act, claimed for it by counsel of the appellee, it must be because the act of 1871 is constitutional, and the will of the legislative department is imperative upon us to carry it into effect, even though in doing so, we may be required to retrace our steps, and change a rule, which by long adherence, has become a rule of property.

In settling this question but two propositions need be considered.

*First*—Is the language of the act plain and unambiguous ? Can we understand from it, what the legislative will is ?  If so,

unless unconstitutional, the court must give effect to such inten-
tion. The court has no power, by construction, to alter or change
the law, but only to see that it is carried into effect, according
to its fair interpretation.

*Second*—If so ascertained and not carried out, it must be be-
cause the act is in violation of some constitutional right.
The power of the courts to pass upon this question, is well estab-
lished, but it is equally well established, that the courts should
not declare an act to be unconstitutional, unless clearly satisfied
that such is the case.

The act which we are called upon to consider, reads as follows:

"At any time after the lapse of two years from the time of
sale of any tract of land or lot for taxes, if the same shall remain
unredeemed, the County Clerk, or any of his successors in office,
on the production of the certificate of purchase, shall execute
and deliver to the purchaser, his heirs or assigns, a deed of con-
veyance for the tract or lot described in such certificate. In case
the certificate has been assigned, the County Clerk shall briefly
recite the fact in the deed. The deed so made by the County
Clerk, shall be acknowledged and recorded in the same manner
that other deeds and conveyances of real estate are required to
be acknowledged and recorded by the laws of this State, and
shall vest in the grantee, his heirs or assigns, the title to the real
estate therein described, and shall be received in all courts and
places where the title to the real estate thereby conveyed is in-
volved, as conclusive evidence, that each and every act and thing
required to be done, by the provisions of this chapter, had been
complied with, and the party offering such deed in evidence, shall
not be required to produce the assessment, appraisement, notice
of sale, nor any other matter or thing as evidence to maintain
such conveyance, and title thereby acquired : Provided, how-
ever, that the party controverting such deed, and the title

Cairo and Fulton R. R. Co. vs. Parks.

thereby conveyed, may, for the purpose of invalidating or defending the same, show either one of the following facts, only:

"*First*—That the land conveyed by such deed, was not subject to taxation at the time of the assessment thereof, under which assessment such sale was made.

"*Second*—That the taxes due thereon had been paid, according to law, before the sale.

"*Third*—That such land had been duly redeemed, according to law, before the execution of such deed.

"*Fourth*—That the land was the property of a *femme covert*, an insane person, a minor, or a person in confinement, at the time the land was sold and the deed executed."

The objection urged against the validity of this act is, that with the exceptions above, it makes all of the recitals in the deed conclusive evidence of their truth, and no matter how false, denies to the party assailing the validity of the deed, the right to introduce evidence to prove that they are false, and that his property has been sold without authority of law.

If the effect is given to this statute claimed for it, then, if the citizen is the owner of land, he must prove that he has paid the taxes on the land, even though never assessed for taxation, no taxes ever levied, no sale of the lands made, or must redeem it, paying taxes and penalty—provided he labors under none of the disabilities enumerated, on the mere recital, that these statute requirements have been complied with, because they have been recited in the deed.

To make the recitals in the deed conclusive evidence of their truth, and to deny to the party who desires the truth of them, the privilege of proving them to be false, is, in effect, manufacturing falsehood into truth, or giving to falsehood the validity and effect of truth. If the legislature has power to do this, then, that provision in the bill of rights, which ordains that,

"no one shall be deprived of life, liberty, or property, but by the judgment of his peers, or the law of the land," is a dead letter, because to deprive the citizen of the right to protect his property by showing that it has been taken from him contrary to law, is, in effect, denying to him the protection of the law.

The legislature may declare, what shall be received as evidence, but it cannot make that conclusively true, which may be shown to be false ; at all events, if such facts are necessary to show that the substantial rights of property are to be affected, and he is made to lose his property.

Mr. Cooley, in his work on Con. Lim., 368, refers to the statutes of several of the states, which were intended to change the common law rule with regard to the burden of proof in such cases, and says: " These statutes take away no substantial right ; they only change the order of proceeding, in the legal tribunals, in exhibiting the evidence of substantial rights, and they rest on the solid foundation of the supreme authority of the legislature, over the whole subject of evidence ; an authority, however, which has its very plain limit, that it cannot deprive one of his property by making his adversary's claim to it, whatever that claim may be, conclusive of its own validity ; it cannot, therefor, make the tax deed conclusive evidence of the holder's title to the land."

Mr. Blackwell, in his work on Tax Titles, p. 97, after stating the common law rule, which required of the claimant under a tax title, before he could introduce his deed as evidence, to prove that all the requirements of the law had been complied with by the agents of the government, said: " It is now proposed to show how far this rule has been changed by legislative enactment in the several states. That the legislature possess competent power to change the common law rule of evidence, and declare that the tax deed, or certificate of sale itself, shall be received in all the

Cairo and Fulton R. R. Co. vs. Parks.

courts as *prima facia* evidence, that all (or any one, or more) of the pre-requisites of the law have been complied with, and thus to shift the *onus probandi* from the shoulder of the purchaser to those of the owner, is conceded. But that the legislature has the further power to declare the deed concluisve evidence, is denied, * * * Is it true that the legislature possess such arbitrary authority? Is it true that the law making power, under the pretense of regulating remedies, can violate the obligation of contracts, and divest the estate of the citizen? May the legislature do that indirectly, which it is forbidden to do by direct means? To render the law in question valid, these questions must be answered affirmatively."

We are aware that in some of the states in which statutes have been passed declaring the recitals in a tax deed to be conclusive evidence of the truth of such recitals, the courts of those states have held the acts valid.

The decisions seem to have been made under an assumption that the legislature having distinguished between such acts as are essential to the validity of the deed, and such as are not, may make the recitals of the non-essential acts conclusive evidence of their performance. 16 Iowa, 512; 25 Ib., 146; 17 Wis., 565; 18 Ohio, 406; 23 Wis., 245.

In this latter case it was held that the general authority of the taxing officer, and the liability of the land for taxes being conceded, all other questions are at an end, and that the assessment, levy and sale, are of so formal a character, that a recital of them in the deed will be held conclusive.

The grounds upon which these decisions were made, are not satisfactory; they are based upon an assumption of power in the legislature in order to reach conclusions, which amount at last to the direct declaration of conclusiveness of recitals, whether true or false.

But aside from these we find other decisions directly in point, which hold differently. Thus in *McReady* v. *Sexton and Son*, 29 Iowa, 356. Ch. J. Cole, in a well considered opinion and review of the decisions to which we have referred, and many others, held that as regards all of the essential prerequisites to be performed in order to confer power to sell lands for the payment of taxes, the legislatures have no power to give a conclusive effect to them.

After enumerating the various steps required to be taken in order to confer power to sell, among which are an *assessment* and *levy*, the judge proceeds: "The legislature may prescribe the time and manner in which these essential and judicial acts shall be done; but it cannot constitutionally, or, in the nature of things, provide for passing the title to property for the non-payment of taxes without them. As to the time or manner in which they shall be done, the direction of the legislature is supreme, and cannot be judicially controlled or interfered with. In other words, the legislature being supreme, may prescribe the the manner of doing the act, and make that, or any other time, or manner which the persons doing it may adopt, legal and sufficient. But this power of the legislature extends only to those things over which it is supreme. As to the essential and jurisdictional facts, so to speak, which the legislature cannot annul or change, it cannot excuse the non-performance of them, and of course cannot make the doing any other thing a substitute for them, or conclusive evidence of their being done.

"It follows therefore, upon principle, that it is not competent for the legislature to make the tax deed *conclusive* evidence of a compliance with the essential requisites we have above named; such an enactment is in conflict with the constitutional provisions aboved named."

After the most careful consideration of the authorities and decisions to which we have been referred, or which have come within the range of our examination, we feel satisfied that the weight of authority is most decidedly in support of our former decisions, which hold the recitals in the tax deed only *prima facia* evidence of their truth, and subject to be disproven by competent evidence.

In thus holding, we are aware that we have extended our inquiry beyond the precise question before us; the sufficiency of the defendant's answer upon demurrer; but as the question was fully argued by the counsel on both sides as if presented upon an issue of fact upon trial, and, as we must suppose that the court below was led into error by supposing that the deed, which was made profert of as part of the complaint, was in fact such, we have thought it due to the importance of the case and its speedy settlement, to consider the question as fully as if presented upon a question of the effect of the deed as evidence to sustain the issue.

The facts set up in the answer present an unusually strong case, if true. The land was sold for the payment in part of a special school tax, one not imposed by law, but, if at all, by a voluntary assessment of the tax payers of the school district upon themselves. This assessment it is alleged was never made; there was no return to the County Court of such assessment, in the absence of which, we have said the County Court could not make a levy upon them for its payment. In point of fact the land of the defendant was not subject to taxation, certainly not by force of law, for there was no law which imposed a special school tax upon the property; if imposed at all, it was to have been by voluntary consent, with regard to which the law placed no obligation upon the owner of the land.

The answer sets up these facts in defense; the demurrer admits them to be true.    We must hold the answer sufficient in law, if sustained in evidence to base a recovery upon the tax deed.    In thus holding we are fully sustained in our former decisions.    *Murphy et al* v. *Harbison*, 29 Ark., 340.    The court erred in sustaining a demurrer to this answer.

The amended answer filed by leave of the court, is in substance, that the defendant is a railroad corporation, and the owner of the land in controversy, that it erected a depot, upon the land within certain defined limits, including a railroad track, and other necessary buildings and appurtenances, which, together with the lands are, under the charter and laws passed in regard to the same, exempted from taxation.    The charter and the several acts are specially referred to.

If the lands in controversy had been acquired by grant, donation, or subscription in aid of the construction of the road, then it would have been exempted from taxation under the provisions of the second section of the act appoved April 8th, 1869, which was in force at the time the land in controversy was assessed, for taxes and sold.

The act provides:    "That every railroad company in this State shall, on or before the first day of January of each year, furnish to the auditor of public accounts a full list of lands acquired, by grant, donation, or subscription, in aid of the construction of its road ; which lands shall not be listed or subject to taxation; until conveyed to actual purchasers by such company," most clearly having reference to the land grants and donations made in aid of the road, to be sold upon the completion of sections of twenty miles as provided by the charter and the grants subsequently made in aid of its construction.

It is affirmatively shown, that this tract, was not a grant made to aid in the construction of the road, but a grant by purchase

from the United States on the 1st of July, 1859, to the defendants. It was the property of defendants, granted to them by patent without reference to the use or purpose for which it was to be used. Neither the act of incorporation nor any of the subsequent acts, with regard to the franchise, or the property held by it, have application to this land, or exempts it from taxation. There is however a provision, which protects from taxation, the road bed and its appurtenances, after certain periods and upon certain contingences. But until it is shown that there was a road bed, something to which a fixture could be attached, no exemption could be claimed; whether at the time the tax was levied and the lands were sold, there was a road bed, with appurtenances upon the land, does not appear; the answer is silent as to that, and if, in fact, there was such road bed and fixtures as averred in the answer, at the time the property was assessed and sold, then to the extent of the exemption, it was irregular to sell the whole tract which included the exemption, and the sale would be irregular.

The demurrer must be overruled, and leave given to the plaintiff by motion, for that purpose, to require of the defendant, to state whether there was at the time the lands were assessed for taxation, such road bed, appurtenances and fixtures upon it.

The objection to the want of proper parties, by the defendant, is not well taken. The legal title is shown to be in the wife, and and she, under our Constitution and laws, had a right, in her own name, to prosecute her suit for the recovery of the land; once in possession, tnere may arise rights in the husband which we need not here consider.

It is objected by plaintiff's counsel that as two years have elapsed between the sale of the land and the interposition of this defense, the defendants are barred from interposing objections to the validity of the sale of the land.

The act of 25th March, 1871, relied upon as a bar to the defense; provides, "that all suits brought to avoid the sale of land for taxes, shall be commenced within two years from the date of sale and not afterwards."

There is another provision of the same act which gives to the owner of the land, two years in which to redeem it, and in the meantime secures to him quiet and undisturbed possession, so that the date of the right to redeem, and the time allowed in which to sue, end on the same day. The result would be that the purchaser would acquire title at the same time that the owner of the land would have a right of action, no day would be given him to defend. The plaintiff could not sue before the expiration of the two years, because he could acquire no title until that time, nor could the defendant interpose an earlier defense, because no one contested his right of possession or property. The statute of limitations does not begin to run in any case until there is a complete and present cause of action. *Denton's Ex'rs* v. *Embury & Young,* 10 Ark., 228.

By the revenue laws of Iowa, five years are given as the limitation: Held that the statute did not begin run until the execution of the deed. *Eldridge* v. *Kuehl,* 27 Iowa, 160.

But in truth this statute limits the time for bringing suits, to question, or set aside a sale of land for taxes, but fixes no time whatever for making a defense when the owner is in possession. All statutes of limitation must proceed upon the idea that the party has had opportunity to try his rights in court.

A statute, says Mr. Cooley, which should bar the existing rights of claimants without affording the opportunity after the time when the statute bar took effect, would not be a statute of limitation, but an unlawful attempt to extinguish rights. Con. Lim., 366.

"One who is himself in possession; in the legal enjoyment of the property, cannot have his rights forfeited to another by failure, to bring suit against that other, without a time sufficient to test the validity of a claim which the latter may make, but has taken no steps to enforce." Ib., 369.

The objection is not well taken.

The objection that the cause was improperly transferred from the Lafayette Circuit Court to that of Miller County cannot be sustained. The objection to the removal of the cause is, that the corporation was not a resident of the County of Miller, a part of Lafayette at the time the suit was brought, and in which the land in controversy lay. The corporation had extended its road into that county, and although not strictly a citizen of the county, as the lands, the subject matter of the litigation, lay there, and as the case has progressed to trial, which resulted in a judgment in favor of the appellee, who with one hand reached out to assert the validity of the jurisdiction of the court and the judgment, and with the other, to withdraw the case, and send it back to Lafayette County to be tried there—under the circumstances of the case, we think that the Miller Circuit Court has jurisdiction of the case, and that the litigation should be heard and finally determined in that court.

Upon consideration of the whole case we must hold that the judgment and decision of the Circuit Court be reversed and set aside with costs, and the case remanded to the court below with instructions to permit the plaintiff to interpose such objections as she may choose to the sufficiency of the defendant's first and amended answers, and that they be required to make them more definite and certain in the particular parts herein indicated, and for further proceedings to be had according to law and not inconsistent with this opinion.