MAINE UNEMPLOYMENT COMPENSATION COMMISSION

*vs.*

ANDROSCOGGIN JUNIOR, INC.

MAINE UNEMPLOYMENT COMPENSATION COMMISSION

*vs.*

EDWARD M. HEALY.

MAINE UNEMPLOYMENT COMPENSATION COMMISSION

*vs.*

E. J. CONQUEST.

Kennebec.  Penobscot.     Opinion, November 7, 1940.

John S. S. *Fessenden*, Assistant Attorney-General, for plaintiff.
*Nelson, Wilson & Nelson*, for defendants.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

HUDSON, J. On report. These three actions, based on Sec. 14 (b) of the Maine Unemployment Compensation Law (P. L. 1935, Chap. 192, as amended), were brought for the purpose of collecting unemployment contributions. It is stipulated that in each due notice was given and payment demanded.

### The Healy Cases

For many years before 1936, Mr. Healy owned and operated a boys' camp known as Camp Androscoggin. That year he and two of his camp counsellors organized a corporation known as Androscoggin Junior, Inc., for the purpose of creating and operating a separate camp for younger boys. Mr. Healy was to continue to

carry on the senior camp as before and the corporation was to maintain and operate the junior camp.

The capital stock authorized was $50,000, consisting of five hundred (500) shares of the par value of $100 each. Its officers consisted of three directors, president, vice-president, treasurer, secretary, and clerk. Under its by-laws, it was provided that the board of directors had the power to fill vacancies and declare dividends; as well as to control and manage the business. The president, Mr. Healy, was the "chief executive officer and head of the Company" and in the recess of the board of directors was given the general and active management of the company's business and affairs. Without the order of the board, duly entered in the minutes, no agreement, contract, or obligation (other than a check) for more than $100 could be made. Checks were to be signed by the treasurer and countersigned by the president and notes, signed by the president or vice-president and the treasurer. All contracts required the signature of the president. The three incorporators were elected directors.

Of the stock issued, Mr. Healy received one hundred and thirty-five (135) shares and the two counsellors, thirty-two and one-half (32½) each, so that Mr. Healy owned sixty-seven and one-half per cent (67½%) of the outstanding stock.

In January, 1937, the company employed men to clear land preparatory to erecting necessary buildings for the camp. In April, 1937, it contracted for the erection of the buildings. It opened for business on June 30, 1937. During 1937, sixteen of the thirty-two weeks in which the company employed eight or more employees were entirely devoted to building the camp and in preparing to go into the business of operating; ten, to conducting the camp and closing it for the winter; and the remaining six, to preparing ground for the season of 1938.

In 1938, the company did not employ eight employees so as to come under the law of eight under the act. Nor did Mr. Healy, as proprietor of the senior camp, in 1937 or 1938 employ eight workmen. If he and the company were treated as a single unit, eight or more persons were employed in 1937 but not in 1938.

The company's contributions for 1937 were paid. The plaintiff now seeks to recover contributions from the company for the year 1938. The plaintiff's contention is that it is entitled to recover these

contributions from the company because it was an employer under the act in 1937 and continued to be an employer in 1938 since it failed to terminate its status as provided in Sec. 8 (b) of the statute. (Also see Sec. 19 [f] [6].)

From Mr. Healy it claims the right to recover contributions in 1937 because, although he did not employ eight or more under the act that year, he had common control of both camps and it says that they constituted an employing unit which, considered as a single unit, employed eight or more in 1937. As to 1938, it contends that Healy was an employer because he failed to terminate his liability as provided in Sec. 8 (b) of the statute. (Also see Sec. 19 [f] [6].)

The defendants in each case pleaded the general issue and specially that if they were indebted as plaintiff declared under the statute, the statute was in violation of the State and Federal Constitutions.

Section 7, Contributions, (a) Payment (1) provides:

"On and after January 1, 1936, contributions shall accrue and become payable by each employer for each calendar year in which he is subject to this act, with respect to wages payable for employment (as defined in section 19 [g]) occurring during such calendar year. . . ."

Section 19, Definitions (d) provides:

"'Contributions' means the money payments to the state unemployment compensation fund required by this act.

"(e) 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1935, had in its employ 1 or more individuals performing services for it within this state. All individuals performing services within this state for any employing unit which maintains 2 or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of this act. . . .

"(f) 'Employer' means: (1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of 20 different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment, 8 or more individuals (irrespective of whether the same individuals are or were employed in each such day) ;

  *    *    *    *

"(4) Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests, or which owns or controls 1 or more other employing units (by legally enforcible means or otherwise), and which, if treated as a single unit with such other employing unit, or interests, or both, would be an employer under paragraph (1) of this subsection:

  *    *    *    *

"(6) Any employing unit which, having become an employer under paragraph (1), (2), (3) or (4), has not, under section 8, ceased to be an employer subject to this act ; . . . ."

Paragraph (g) (1) of said Sec. 19 provides:

"Except as otherwise provided in this subsection (g), 'employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

In Par. (g) (6), it is stated that:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that

"(A) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact ; and

"(B) such service is either outside the usual course of the business for which such service is performed, or that such serv-

ice is performed outside of all the places of business of the enterprise for which such service is performed ; and

"(C) such individual is customarily engaged in an independently established trade, occupation, profession or business."

Defending counsel first argues that the company did not remain an employer under the act and was "not required to contribute thereunder for two consecutive years where the operation of its business at no time" came "within the terms of the Act and the only basis for its inclusion thereunder" was "distinctly non-repetitious employment, exclusively devoted to organization and construction in the first year of its existence," and if so, that the act is unconstitutional.

Thus at the outset the question is raised whether a company that employs labor for the purpose of construction of its plant is an employer under the act. The statute makes no distinction between employees who work on original construction and those who labor in the plant's subsequent operation. Considering the purpose of the act and the benefits expected to be conferred, we do not consider that the legislature intended that there should be any such distinction. An employee out of work is as much in need of assistance through the agency of this law whether he has ceased working on original construction or in later operation. Section 19 (g) (1) states that, "Except as otherwise provided in this subsection (g), 'employment' means service," and we fail to see how this work in original construction comes within any exception in subsection (g).

The 1937 contribution, however, was paid. What is sought here from the company is payment for 1938, during which year it was not an employer under the rule of eight. For 1938 it can be held to contribute only if by operation of the law it was then an employer. The plaintiff says it was, because of Sec. 8 (b), which provides a right for the company before a certain date to file a written application for termination of coverage, which it failed to do. Failure so to do continued its status as an employer under the act for 1938, although that year it did not actually employ the required eight either alone or jointly with Mr. Healy in his operation of the senior camp.

This carry-over provision of said Sec. 8 (b) we consider reason-

able and proper. It is somewhat analagous to the statutory duty placed upon inhabitants to make and bring in true and perfect lists of their taxable estates else be barred from making application to the assessors or county commissioners for abatement of taxes. Section 70, Chap. 13, R. S. 1930, as amended. Considering the beneficial effect of this carry-over provision in simplifying and lessening the work of the commission without unduly burdening the employer and at the same time giving it full protection, we hold that the statute is reasonable and unobjectionable.

While it is true "that when a statute imposing or enforcing a tax or other burden on the citizen even in behalf of the State is fairly susceptible of more than one interpretation, the court will incline to the interpretation most favorable to the citizen" (*Millett* v. *Mullen,* 95 Me., 400, 415, 49 A., 871, 873), yet we do not consider that this statute as attacked is "fairly susceptible of more than one interpretation" so as to come within that principle of law. Besides, it may be regarded as enacted in the interest of the public welfare in providing for assistance to the unemployed and so be entitled to receive a liberal interpretation. 59 C. J., Sec. 656, pages 1105, 1106. Relief of unemployment is a public purpose. *Carmichael et al.* v. *Southern Coal & Coke Co.,* 301 U. S., 495, 515, 57 S. Ct., 868.

It is contended that "an older company in exactly the same field under exactly the same conditions as to employment (perhaps a competitor) would pay no tax whatsoever during the period in question" and that consequently the law works a discrimination and so is unconstitutional. But the fact is that the classes are different. The law makes no discrimination between two old or two new companies. This court recently, in the case of *State of Maine* v. *King,* 135 Me., 5, 188 A., 775, has discussed at length the law relating to reasonable classifications. It is stated in that case on page 19:

"It must be borne in mind that discrimination alone is not sufficient to render the Act unconstitutional under the Fourteenth Amendment. In order thus to void it, its provisions must . . . create a discrimination, unwarranted by actual differences, so that the statute is purely arbitrary and effects legislation which unreasonably and without proper distinction favors some persons or classes over others in like circumstances."

We consider the classification to be neither arbitrary, unreasonable, nor unjust, so as to offend either the State or Federal Constitution.

In the action against Healy, it is contended that no contribution is recoverable because in neither 1937 nor 1938 did he as an individual employ eight or more and that he does not come under the provisions of Sec. 19 (f) (4) either as an owner or as a controller of one or more other employing units.

The plaintiff does not claim that Healy owned the company but that he controlled it within the meaning of said Sec. 19 (f) (4). The control required is not necessarily that legally enforcible. It may be otherwise. It is a matter of actual control. Mr. Healy, who had run the senior camp for years and who in 1936 with the two counsellors caused to be created the new corporation to operate the junior camp, was elected president, a director, and was the owner of the majority of the corporate stock. As president he was "the chief executive officer and head of the Company." By-laws, Article IX, Section 1. Financially he had more in the corporation than either of the other stockholders. Owning the majority of the stock, he could control the election of the company's officers and determine its policies through the agencies of those so elected. Taking all the facts into consideration, particularly Mr. Healy's relations with the two counsellors before the organization of the company and the fact that they had received their training under him who had carried on a boys' camp business for more than twenty years, it is but natural to conclude that they regarded him as the one whose voice in the conduct of the company's affairs should govern. We find that he controlled this corporation within the meaning of the statute.

While it is true that a corporation is a separate entity from its stockholders, yet it is apparent that the legislature, when it enacted this statute, intended to go behind the corporate veil and discover actuality and if it were found that the company, although a corporation, were one so controlled, compel contribution. Otherwise, an individual intending to carry on a business of considerable magnitude, requiring the employment of many more than eight, could organize several corporations, each employing less than eight, escape contribution, and deprive many employees of the benefits intended by the act.

In *Coffin et al.* v. *Rich*, 45 Me., 507, a statute was held constitu-

tional that provided that stockholders should be personally liable for debts contracted by the corporation following the enactment of the statute. Also see *Eames* v. *Savage*, 77 Me., 212, 219 ; 34 Harvard Law Review, 584 ; 27 Harvard Law Review, 386 ; 42 Harvard Law Review, 955 ; *United States* v. *Lehigh Valley R. R. Co.*, 220 U. S., 257, 31 S. Ct., 387 ; *Chicago-Milwaukee Railroad Co.* v. *Minneapolis Civic & Commerce Association*, 247 U. S., 490, 38 S. Ct., 553. In the latter case, the court said on page 501 :

"In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

In *Unemployment Compensation Com'n* v. *City Ice & Coal Co.*, 216 N. C., 6, 3 S. E. (2d), 290, the court stated on page 292 :

"It regards corporate organization objectively and realistically, unencumbered by fictions of corporate identity, and thus, brushing aside form, deals with substance."

Counsel for the plaintiff in his brief has well stated :

"The Legislature recognized the obvious possibility of evasion by splitting one's establishments. In certain types of business, particularly those where labor costs represent a large part of the total expenses of operation, and where efficiency would not be materially impaired by the division of the unit, an employer might find it quite profitable to split his establishments into several smaller units, each employing not more than seven employees. Surely the Legislature would not be powerless to avoid this rather obvious type of evasion. Assuming the statute as a whole is valid, any provision reasonably designed to avoid possible evasion is justified."

In line with the cases cited, we hold that the legislature had the general power to recognize the consequences of common control in appropriate circumstances and disregard the corporate entity.

Section 19 (f) (4) does not require that the employing units whose employees together make up the eight must be carrying on the same

business, but simply that the units be owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests. In *McMaster Inc. et al.* v. *Daniel et al.* (South Carolina, a Court of Common Pleas case decided in 1938), the court states:

> "Even if the partnership was a separate business from that of the corporation it would still fall within the classification set out in the Act. The partnership was clearly 'controlled by the same interest' as the corporation."

Also see *Gibson Products Co., Inc. of Tulsa et al.* v. *Murphy et al.*, 186 Okl., 714, 100 P. (2d), 453.

The defense does not contend that the rule of eight constitutes an unconstitutional discrimination. Had that claim been made, authority is to the contrary. *Carmichael et al.* v. *Southern Coal & Coke Co.*, supra; *Howes Brothers Co.* v. *Massachusetts Unemployment Compensation Commission*, 296 Mass., 275, 5 N. E. (2d), 720; *Gillum* v. *Johnson*, 62 P. (2d), 1037; *Tatum* v. *Wheeless*, 178 So., 95; *W. H. H. Chamberlin, Inc.* v. *Andrews*, 2 N. E. (2d), 22; *Beeland Wholesale Co.* v. *Kaufman*, 174 So., 516; and *Madden* v. *Commonwealth of Kentucky*, 309 U. S., 83, 60 Sup. Ct., 406.

## The Conquest Case

Herein the plaintiff seeks to recover contributions under the Unemployment Compensation Act for the calendar years 1936, 1937, and 1938 (the total principals of which amount to $90.58), together with interests on the same.

The record discloses that Mr. Conquest, a resident of Bangor, during the above-named years was the owner of his home and two tenement houses and also was a stockholder in three corporations. From time to time he employed carpenters to repair his houses. One of them at times worked in and about his dwelling-house mowing the lawn, taking care of the grounds, and doing odd jobs and chores and in addition thereto did similar work upon the premises of the tenement houses. The carpenters also built an office for him on his homestead property.

During these years he was the owner of approximately one-half of the outstanding stock in one corporation and of one-third in each of the other two, all three corporations engaged in the business of

selling automobiles, accessories, etc. He was the president and general manager of these companies and, it is conceded, formulated their policies. The corporate was wholly independent from his tenement house business.

In his personal business at no time since January 1, 1936 (when the Unemployment Compensation Law became effective) had he employed eight or more workmen so as to come under the act. But the plaintiff claims, nevertheless, that he is liable for personal contribution because of the provisions of Sec. 19 (f) (4) above quoted: that is, as the controller of these employing units. That he owned and controlled the real estate business is undisputed and taking this case for decision on facts as well as on law (it having been reported to us), we are convinced and hold that he was actually the controller of the corporate businesses within the meaning of said statute as we have heretofore construed it in this opinion.

The defendant particularly claimed that the employment of the carpenters and others who worked in the real estate business was "merely incidental to his ownership of his real estate" and so does not come within the law. He relies on the recent opinion of this court in *Maine Unemployment Compensation Commission* v. *Maine Savings Bank*, 136 Me., 136, 3 A., 2d, 897. In that case a savings bank by its agent or agents made contracts with individuals, partnerships, or corporations engaged in one or more of the building trades for repairs, improvements, and alterations to parcels of real estate acquired by it by the foreclosure of mortgages thereon or upon judgments to secure debts owed to the bank. These contractors in turn employed laborers to do the work contracted. We held that under these circumstances no contribution was payable under the act (see Sec. 19 [e]) because the work done was not part of the bank's usual business which was banking, and that this work was merely incidental to the banking business. But here, on the contrary, Mr. Conquest owned and let these tenement houses as part of his usual business.

## Conclusion

In all three of these cases, it is conceded that the amounts of the contributions as set forth in the writs are correct and that the contributions, if due, were payable on the several dates set forth in the

writs and are subject to interest at the rate of one per cent per month thereafter until paid. The plaintiff in each of these three cases is entitled to judgment and the mandates must be:

(1) *In Maine Unemployment Compensation Commission* v. *Androscoggin Junior, Inc., Law Court Docket No.* 605, Nisi Prius *Docket No.* 276, *judgment for the plaintiff in the sum of* $106.90, *together with interest at the rate of* 1% *per month from and after the date on which each component part of said total amount was due and payable as prescribed by the Commission.*

(2) *In Maine Unemployment Compensation Commission* v. *Edward M. Healy, Law Court Docket No.* 606, Nisi Prius *Docket No.* 277, *judgment for the plaintiff in the sum of* $411.28, *together with interest at the rate of* 1% *per month from and after the date on which each component part of said total amount was due and payable as prescribed by the Commission.*

(3) *In Maine Unemployment Compensation Commission* v. *E. J. Conquest, Law Court Docket No.* 1010, Nisi Prius *Docket No.* 5845, *judgment for the plaintiff in the sum of* $90.58, *together with interest at the rate of* 1% *per month from and after the date on which each component part of said total amount was due and payable as prescribed by the Commission.*

BARNES, C. J., having retired, did not join in this opinion.