## WASHINGTON OIL CORPORATION OF TEXAS v. STATE.

### No. 3917.

Court of Civil Appeals of Texas. Beaumont.
Nov. 12, 1941.

Rehearing Denied Dec. 10, 1941.

Saner, Saner & Jack, of Dallas, for appellant.

Gerald C. Mann, Atty. Gen., and Morris C. Hodges and Cecil C. Rotsch, Asst. Attys. Gen., for appellee.

WALKER, Chief Justice.

This suit was filed in Travis county by the State of Texas, appellee, against appellant, Washington Oil Corporation of Texas, for the sum of $567.30 alleged to be due for the period covering the years

518

1936, 1937 and 1938, beginning January 1, 1936, and ending December 31, 1938, as unemployment compensation tax, and penalties and interest thereon, under the Texas Unemployment Compensation Act, Vernon's Ann.Civ.Statutes, Articles 5221b—1 to 22, being Acts of 1936, 44th Leg., 3rd C.S., page 1993, Chapter 482, as amended by Acts of 1937, 45th Leg., p. 121, Chapter 67. The issues of this suit invoke the application of the following sections of Art. 5221b, V.A.C.S., of the Texas Unemployment Compensation Act. Section 17 (f) (1):

"Any employing unit which for some portion of a day but not necessarily simultaneously, in each of twenty (20) different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight (8) or more individuals (irrespective of whether the same individuals are or were employed in each such day)"; and Sec. 17 (f) (4):

"Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection."

It was the theory of appellee's petition that appellant was an "employer" under the provisions of Sec. 17 (f) (4), supra, on allegations that appellant, Jenkins Oil Corporation, Control Gathering System, Inc., and Southern Oils, Inc., were owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interest. There was no allegation that appellant, nor any one of the three other named corporations during the years in issue, was an "employer" under the provisions of Sec. 17 (f) (1), supra, but appellee alleged that the four corporations, being in fact a single employing unit under Sec. 17 (f) (4), supra, had more than eight employees for and during the number of weeks prescribed by Sec. 17 (f) (1), supra, and therefore, the four corporations were subject to the tax as an employer.

Appellant answered by plea of privilege to be sued in Dallas county, which was heard on the trial of the case on its merits, and overruled. On the overruling of the plea of privilege, appellant demurred to appellee's petition on the ground that Sec. 17 (f) (4), supra, was void as being in violation of Sec. 16, Art. 1, of our State Constitution, Vernon's Ann.St. which reads: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

On the merits, appellant answered that it was a private corporation chartered September 2, 1932; that the control and management of its affairs were solely with its board of directors; that its business had been conducted strictly in accordance with the statutes of this State as such legal entity; and that at no time it had more than eight employees.

All demurrers and exceptions were overruled, and judgment was for appellee for the full amount sued for, from which appellant prosecuted its appeal to the Austin Court of Civil Appeals. The case is on the docket of this court by order of transfer by the Supreme Court.

■ The venue of this case was properly laid in Travis county. This point was ruled against appellant's contention by the Austin Court of Civil Appeals in Lally v. State, Tex.Civ.App., 138 S.W.2d 1111 and Barrett v. State, 138 S.W.2d 1114.

■ The Texas Unemployment Compensation Act did not become effective until October, 1936. By the terms of the Act the tax was levied, and on authority of the Act the court's judgment was against appellant, for the taxes for all of 1936. On the ground that the Act levied taxes from the 1st of January, 1936, until the effective date of the Act in October, 1936, appellant contends that, in this respect the Act was a retroactive law and in violation of Sec. 16, Art. 1, supra, of our State Constitution. This point is ruled against appellant by the following proposition by our Supreme Court in Friedman v. American Surety Co., Tex.Sup., 151 S.W.2d 570, 577:

"Section 16 of Article I of our Constitution provides that no bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made. We can see nothing in this Act that even remotely violates this constitutional provision."

■ The following summary of the evidence supports the trial Court's conclusion

that the four corporations named above, during the years in issue, constituted a single employing unit, in that they were owned or controlled by legally enforceable means or otherwise, directly or indirectly, by the same interest, within the provisions of Sec. 17 (f) (4):

(1) On January 1, 1936, each of the four corporations had the following named directors: R. E. L. Saner, John C. Saner, W. H. Jack, Jr., Roy Jenkins, Sr., and Wallace Jenkins. R. E. L. Saner died during the taxing years in issue, and after his death the remaining four named persons constituted the board of directors of each of the four corporations.

(2) The five directors, elected as such in 1936, and after the death of R. E. L. Saner, the interests holding his stock, as a unit, owned a majority of the stock in each of the four corporations, and the directors of each of the corporations were named by the joint action of these five several interests.

(3) The four named corporations were each engaged in the oil business; three of them were engaged exclusively in producing oil and the fourth one was engaged exclusively in transporting oil delivered to it by producers.

(4) E. W. Krizan, a field auditor for the Texas Unemployment Compensation Commission, who made a personal inspection of the four corporations in the discharge of his duties as field auditor, testified:

"Q. Do you mean that they (said four companies) all occupied the same offices? A. Yes, sir."

W. H. Jack, Jr., one of the four directors of each of the corporations testified: "all of them (said four companies) were on the twentieth floor" of the Republic Bank Building, and that part of the time they had a common reception room. Each of the four corporations, in their common suite of offices, had the same telephone number but each corporation had an extension line for its personal use; the costs of the telephone were divided among the four corporations. On these facts, we make the conclusion that the four corporations "occupied the same offices," as testified to by Mr. Krizan.

(5) We quote again from Mr. Krizan's testimony:

"Q. Did you or not find the books of each the Washington Oil Corporation, the Control Gathering System, Inc., and the Southern Oils, Inc., in the same offices? A. They were in the same offices. * * * The bookkeeper or auditor performed services for all of the companies during the time of my investigation. * * * At the time I made my investigation apparently the equipment was used by all the companies.

"Q. What do you mean by equipment? A. Machines, tables, desks, filing cabinets. * * * The bookkeeper or auditor performed services for all of the companies during the time of my investigation."

Again, we quote from the testimony of Mr. W. H. Jack, Jr., one of the directors:

"A. Oh, there naturally are books which are kept.

"Q. Did the Southern Oils, Inc., during 1938 have a little bit of paper work and accounting to be done? A. Very little.

"Q. Did they have some? A. There was some. The Southern Oils, Inc., owned six very small wells on the east side of the East Texas Field with a very small income, and its work was work that could be done once a year.

"Q. They had to send out a few reports, like the gross production oil tax reports to the comptroller, and things like that. A. Yes.

"Q. And that was done there in those offices in the Republic National Bank Building; those reports were prepared and sent out from there? A. They were prepared under my direction, yes, sir.

"Q. Were they prepared in the office of Saner, Saner & Jack, or in the three at the other end of the hall at the Jenkins Oil Corporation, Washington Oil Corporation of Texas, and Southern Oils, Inc.? A. Mr. Jenkins did some of it in our office and some down there.

"Q. Where was the stenographer? A. Some in our office and some down there.

"Q. Who was the stenographer during 1938? A. Miss Mattie Nowlin was there during 1938. Miss Winnie McGaw was there a few weeks in 1938, and my recollection was they hired a few occasionally, but those are the only ones. * * *

"Q. Miss Mattie Nowlin and Miss Winnie McGaw did most of the stenographic work during 1938? A. Yes, sir.

"Q. And who were the stenographers during 1937? A. Of course, the bookkeepers do a lot of the stenographic work.

520

"Q. But who were the stenographers? A. Well, we had Mattie Nowlin. She was also a bookkeeper, too, as well as a stenographer, and so was Winnie McGaw. She worked there several weeks. Mattie Nowlin worked the whole year, and B. V. Dooly is bookkeeper and also does stenographic work, and D. D. Brawley also. They do typing and write letters and make reports, and Roy Jenkins, Jr., writes on the typewriter and record reports.

"Q. Winnie McGaw, she—I don't mean her, I mean Mattie Nowlin, she did some of the stenographic work, then, for those three companies during '36 and '37, did she? A. She worked for one of the companies from—or the other, from 1936 down to—in fact, she worked some this year.

"Q. During 1936, who were the stenographers? I believe you just testified to 1937 didn't you, 1938 and 1937? Who was the stenographer in 1936? A. As I say, we had no particular stenographer, but if you are referring to similar office employees, we had Miss Mattie Nowlin working during 1936 and a lady named Claudine Hughes.

"Q. How long did Claudine Hughes work? A. She worked from January to April in 1936.

"Q. So, at the time the only help you had was Mattie Nowlin, the only woman stenographer in the office? A. Yes, Roy Jenkins, Jr., writes on the typewriter, and he was there during 1936.

"Q. Who did he work for? A. He worked for the Control Gathering System, Inc. As far as that is concerned, I do some of the typing too, when I have to, make our reports.

"Q. If Washington Oil Corporation wrote a letter or made out a report in the office of the Washington Oil Corporation, it was the office at the opposite end of the hall from the offices of Saner, Saner & Jack during 1936, Mattie Nowlin probably wrote the letters, didn't she? A. I wouldn't want to answer that question. It is a hypothetical question and—"

(6) The evidence showed loans made from one corporation to the other as follows: (1) $100 from Jenkins Oil Corporation to Southern Oils, Inc., (2) $3,600 from Jenkins Oil Corporation to the Control Gathering System, Inc., (3) $860 from Jenkins Oil Corporation to Southern Oils, Inc., (4) $300 from Washington Oil Corporation of Texas to Southern Oils, Inc., and (5) $100 from Control Gathering Systems, Inc., to Southern Oils, Inc.

(7) The evidence in this case shows that the law firm of Saner, Saner & Jack, originally composed of R. E. L. Saner, John C. Saner and W. H. Jack, Jr., directs the activities of each of these companies to a large extent. This firm represents each of the companies in all legal matters. The members of the firm and their associates own a majority of the stock in each of the four companies. The firm has offices on the same floor of the building in which the office of these companies is located. We believe that all of this is another ear-mark of a unified control.

(8) Each of these four corporations had the same officers. Roy Jenkins, President; John C. Saner, Vice President; Wallace Jenkins, Secretary-Treasurer; and W. H. Jack, Jr., Assistant Secretary-Treasurer of each of said four companies.

(9) On the issue of the exercise of authority over the corporations by their board of directors, Mr. W. H. Jack, Jr. testified:

"Q. Now, who elects the officers of each corporation? A. The directors, the Board of Directors of each company elected the officers of that corporation. * * *

"Q. Who is in active charge? A. There is really nobody in charge. The Board of Directors of each company operates and nothing is done out of the ordinary, just routine, without the Board of Directors of that company passing on it.

"Q. Since Mr. Saner's death, Mr. R. E. L. Saner, every matter of consequence, and every matter of policy that each of these four corporations does, is not decided by one person, but it is submitted to the Board of Directors, consisting of each corporation, of four men, to-wit, you, John C. Saner, Wallace Jenkins, and Roy Jenkins? A. That is true. The matters connected with each company are submitted to the Board of Directors of that particular company, which since Mr. Saner's death is composed of those four individuals. Before the—that wasn't true before that. Before Mr. R. E. L.'s death, it was submitted to the Board of Directors of the particular company that was involved."

(10) Each of the four corporations was separately and independently organized long prior to the enactment of the Texas

Unemployment Compensation Act. During the taxing years in issue, the four corporations had the following stockholders owning stock as indicated:

"Washington Oil Corporation of Texas

|  | Nov. 16, 1934 to June 5, 1938 | June 6, 1938, to Dec. 31, 1938 |
|---|---|---|
| Wallace Jenkins—Sec. and Treas........................ | 562.50 | 1,000.00 |
| Roy Jenkins—President ............................... | 1,000.00 | 500.00 |
| Roy Morris Jenkins, Jr................................ |  | 500.00 |
| Mrs. Illeaine Saner (R. E. L.)......................... | 800.00 | 800.00 |
| John C. Saner—Vice President ....................... | 800.00 | 800.00 |
| W. H. Jack, Jr.—Asst. Secy. and Treas............... | 400.00 | 400.00 |
| Others not related or connected with listed stockholders of 4 named companies............................... | 437.50 |  |
| Total Shares ................................. | 4,000.00 | 4,000.00" |

(b)                      "Jenkins Oil Corporation

|  | July 31 1936 No. Shares | Mar. 1 1937 No. Shares | Sept. 25 1938 No. Shares |
|---|---|---|---|
| Roy Jenkins, President.................... | 13,458.75 | 13,458.75 | 13,458.75 |
| Wallace Jenkins—Secy. and Treas........ | 10,068.75 | 10,434.375 | 10,434.375 |
| John C. Saner—Vice President.......... | 9,500.00 | 9,792.50 | 9,792.50 |
| Mrs. Illeaine Saner (R.E.L.) ........... | 9,500.00 | 9,792.50 | 9,792.50 |
| W. H. Jack, Jr.—Asst. Treas. and Secy. .. | 4,537.50 | 4,683.75 | 4,683.75 |
| Mrs. Jessie B. Moore.................... | 10.00 | 10.00 |  |
| Wallace Jenkins (Trustee for Rebecca Rabinowitz) ........................... | 1,462.50 |  |  |
| United Securities Co..................... | 1,462.50 |  |  |
| Meyer A. Rabinowitz.................... |  | 1,462.50 | 1,462.50 |
| Roy Jenkins, Jr......................... |  | 365.625 | 365.625 |
| Mrs. Roy Jenkins....................... |  |  | 10.00 |
| Total Shares ..................... | 50,000.00 | 50,000.00 | 50,000.00" |

(c)                    "Control Gathering System, Inc.

|  | Dec. 1936 | May 12, 1937 | Jan. 17, 1936 |
|---|---|---|---|
| Roy Jenkins—President ................. | 1 | 1 | 1 |
| Roy Jenkins, Jr. ...................... | 4 | 4 | 4 |
| Wallace Jenkins—Secy. and Treas........ | 5 | 5 | 5 |
| W. H. Jack, Jr., Asst. Secy. & Treas...... | 2 | 2 | 2 |
| Mrs. Illeaine Saner ................... | 4 | 4 | 4 |
| John C. Saner vice president........... | 4 | 4 | 4 |
| Total Shares ..................... |  | 20 | 20" |

From organization of the Southern Oils, Inc., in 1934, its capital stock was owned by Fred Hanna, President, 497 shares; J. B. McCann, Vice President, 1 share, E. F. Stephens, Secretary-Treasurer, 1 share; D. D. Brawley, 1 share. Since May 4, 1937, the stock of this corporation has been owned as follows

"

| | stock as of May 4, 1937 | May 6, 1937 |
|---|---|---|
| Roy Jenkins—President | 125 | 25 |
| Wallace Jenkins—Vice President | 125 | 125 |
| John C. Saner, Vice President | 100 | 100 |
| Mrs. R. E. L. Saner (Illeaine) | 100 | 100 |
| W. H. Jack, Jr.—Asst. Sec. & Treas. | 50 | 50 |
| Roy Jenkins, Jr. | | 100 |
| Total Shares | 500 | 500" |

1938 ownership was same as in 1937.

■ Appellant has briefed this case on the proposition that the controlling point is whether the ownership by the same persons in their individual capacities of stock equal to a majority of the capital stock of each of the four corporations constituted control of the corporations "by the same interests" so as to make each of the corporations subject to the payment of the tax. Appellant has not correctly construed the facts of its case. The ownership of the stock by the five persons is simply one of the facts on the issue of unified control, found against it by the trial court, and not the most significant fact. In finding against appellant on the issue of unified control, the court took into consideration all of the facts of the record, specifically the facts as summarized above. In this case, the issue of unified control was not one of law, on the ownership of a controlling interest in the stock, but, as stated above, was a fact issue to be found by the court on all the evidence, taking all the facts in consideration. It would, therefore, be an academic discussion to review appellant's authorities on the proposition that the ownership of the controlling interest in the stock of the four corporations by the five named persons did not, as a matter of law, constitute unified control. Weighing all the facts of the record, the following authorities support the court's conclusion awarding judgment for appellee for the tax in issue. Naine Unemployment Compensation Commission v. Androscoggin Junior, Inc., 137 Me. 154, 16 A.2d 252; Unemployment Compensation Commission v. City Ice & Coal Co., Inc., 216 N.C. 6, 3 S.E.2d 290.

It is significant to note that the number of stockholders in each of the corporations was small, and that the amount of stock owned by parties other than the five controlling interests was very small in each of the four corporations, points noted and commented upon by the court in Unemployment Compensation Commission v. City Ice & Coal Co., Inc., supra.

It is our conclusion that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.