## JUSTER BROS. INC. v. VICTOR CHRISTGAU, DIRECTOR OF DIVISION OF EMPLOYMENT AND SECURITY.[1]

January 2, 1943.

No. 33,242.

[1]Reported in 7 N. W. (2d) 501.

*R. H. Fryberger,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Kent C. van den Berg,* Assistant Attorney General, for respondent.

STREISSGUTH, JUSTICE.

Appeal under Minn. St. 1941, § 268.10, subd. 9 (Mason St. 1941 Supp. § 4337-28*I*), from a decision of the director of the state division of employment and security fixing the employer-appellant's rate of contribution to the unemployment compensation fund for the year 1941.

An employer's contribution rate for 1941 is determined on the basis of his "beneficiary wage ratio," which is a percentage equal to the total of his beneficiary wages for the three immediately preceding calendar years, divided by his total taxable payroll for the same three years on which all contributions due have been paid

before January 31, 1941. "Beneficiary wages" are defined as "wages paid or payable by an employer for employment to an employee during his base period." *Id.* § 268.06, subd. 3(2), (§ 4337-24C[2]). An employe's "base period" is the first four out of the last five completed calendar quarters immediately preceding the first day of an individual's "benefit year. *Id.* § 268.04, subd. 2 (§ 4337-22A). An employe's benefit year" means the one-year period beginning with the first day of the first week with respect to which the individual files a valid claim for benefits. *Id.* § 268.04, subd. 4 (§ 4337-22C). When an employe files a valid claim and receives his first benefit payment the wages he earned from his base period employer are set up as a charge against that employer's experience rating account.

The appellant is an employer subject to the provisions of the law. The director fixed appellant's 1941 contribution rate at one percent by giving effect to beneficiary wages of two former employes of appellant, namely, W. F. Grenke and Lydia Marshall. Had these beneficiary wages not been charged to appellant, its rate would have been three-fourths of one percent.

W. F. Grenke was in the employ of appellant from the fall of 1939 until April 27, 1940, when he separated therefrom. Upon such separation appellant omitted to send to the division of employment and security a notice of the fact of Grenke's separation as required by the division's rules. Grenke left appellant's employ voluntarily for the purpose of returning to a former job at a country club where he had been employed during the 1939 summer season. During Grenke's base period in 1940, wages earned by him charged against appellant's record for that year were $482.53. In the fall of 1940, when the country club closed for the season, Grenke was separated from employment there because of lack of work and, if otherwise qualified, was entitled to benefits under the act. Having failed to obtain other employment, on October 21, 1940, he filed a claim for benefits, which was allowed, $482.53 thereof being charged against appellant's record for 1940.

Lydia Marshall was in the regular employ of appellant until July 28, 1939, when she separated therefrom, submitting her resignation in writing. The circumstances surrounding her resignation, if unexplained, were such as to disqualify her for benefits insofar as her employment with appellant was concerned. Appellant failed to give notice of her separation from its service. The amount of Miss Marshall's wages appearing in appellant's base periods and charged against appellant's records for the calendar year 1940 was $1,183.22. On August 15, 1939, Miss Marshall filed a claim for benefits, which was allowed on the basis of wages earned from appellant during her base period. Subsequently she procured other employment, which purged her of any involuntary separation from appellant's service, but she was later separated from her subsequent employment because of lack of work. Accordingly, on August 30, 1940, she filed a second claim for benefits, which was allowed on the basis of the wages earned from appellant which had not been previously used with respect to the claim filed August 15, 1939. She was paid no benefits for her claim filed August 15, 1939, until the year 1940. This resulted in a charge against appellant's record in 1940 instead of 1939. The second claim for benefits was also charged to 1940.

The division did not send notice to appellant of the filing of either the Grenke claim or the Marshall claim, notwithstanding appellant had a substantial interest in its determination, no notice being required by the statute as it then read.[2] Nor did appellant have any actual knowledge of the filing of either claim or the

[2]Mason St. 1940 Supp. c. 23AA, was amended by L. 1941, c. 554 (Mason St. 1941 Supp. c. 23AA). The amendment did not become effective until April 28, 1941. Consequently the provisions of Mason St. 1941 Supp. § 4337-24E(1), (Minn. St. 1941, § 268.06, subd. 5[1]), requiring the director at least once each year to give employers notice of benefits chargeable to their accounts and providing for an appeal from the director's determination, were not effective at the time the charges to appellant's record were made in the case at bar. Only the provisions with respect to giving notice of assignment of contribution rate (§ 4337-24E[2]) applied and governed the division with respect to giving of any notices to employers.

allowance thereof until after the time for appeal from the allowance had expired.

The division in the first instance determined the contribution rate of appellant for 1941 by giving effect to the beneficiary wages to three employes, Grenke, Marshall, and one Letourneau. Appellant duly filed a protest and appeal. On administrative review, the division eliminated the charge with respect to Letourneau but retained the charges against appellant's rate with respect to Grenke and Marshall. Notice of said action was duly sent to the employer. The reasons for retaining the Grenke and Marshall charges, as stated by the division, were "separation from service" which "occurred subsequent to 4-21-39. Failure on the part of employer to file a Notice of Separation with the Division pursuant to existing regulations, is sufficient cause for the disallowance of his [appellant's] protest." The employer thereupon appealed to the experience rating appeal tribunal and on that appeal presented facts with respect to the separation from employment of each of its two employes, Grenke and Marshall, establishing that each of them had voluntarily and without cause attributable to the employer separated from their employment. This issue of fact was not contested by the division, which placed its entire reliance upon its regulations Nos. 15 and 16, creating respectively a presumption and an estoppel against the employer. The appeal tribunal made no fact finding as to whether or not these employes were separated from their respective employments under circumstances giving them a right to benefits. Instead, it found merely "that the employer-appellant failed to give notice of such separation and of the reasons therefor to the Division of Employment and Security." On the basis of this failure to give notice it affirmed the division's determination.

The employer thereupon appealed to the director, who in turn affirmed the decision of the appeal tribunal. It is from that decision of the director that the appeal to this court is taken.

Mason St. 1940 Supp. § 4337-27A, B, in effect during 1939 and 1940, reads as follows:

"An individual shall be disqualified for benefits:

"A. For voluntarily discontinuing his most recent employment without good cause attributable to the employer, if so found by the commission. Benefits paid on wage credits earned for employment with such employer shall not be considered in determining any individual employer's future contribution rate under 1938 Supplement to Mason's Minnesota Statutes of 1927, Section 4337-24, subsection C as amended by this act.

"B. If he has been discharged for misconduct connected with his most recent employment, if so found by the commission. Benefits paid on wage credits earned for such employment shall not be considered in determining any individual employer's future contribution rate under 1938 Supplement to Mason's Minnesota Statutes of 1927, Section 4337-24, subsection C as amended by this act."

About March 1938, the then industrial commission promulgated regulation 15, which provided, *inter alia:*

"Whenever a worker is separated from his employment * * * under conditions which may disqualify such worker from benefits * * *, his employer shall, within twenty-four hours after such separation, deliver to such worker or mail to his last known address * * * a separation notice * * *. The employer shall immediately send a copy of such separation notice to the Minnesota Unemployment Compensation Division."

The regulation further provided:

"(d) Any employer who fails to comply with any of the requirements of this regulation shall be *presumed to have admitted* that any worker separated from his employment is not disqualified under any of the provisions of Section 7 of the Minnesota Unemployment Compensation Law." (Italics supplied.)

Regulation 15 was superseded by regulation 16, which became effective June 1, 1940. Regulation 16 also provided for notice to the division of separation from employment, but, instead of creat-

ing a presumption against the employer for failure to send the notice, it provided:

"D.—Failure on the part of any employer to comply with the foregoing provisions of this regulation shall be *deemed to be an admission* by him that such individual was separated from his employment under conditions which would not disqualify him for benefits. Such employer shall thereafter be *estopped from protesting:*

"(1) The payment of benefits to any individual for whom a separation notice was not issued;

"(2) The effect of payment of such benefits on his experience ratio used in determining his future contribution rates based on benefit experience." (Italics supplied.)

Regulation 15 was effective at the time of Grenke's separation and at the time of Miss Marshall's first separation. Regulation 16 was effective at the time Miss Marshall separated from her later employment and at the time of the hearing before the experience rating appeal tribunal and the hearing before the director.

As we have pointed out, appellant had given no notice of the separation from employment of either Grenke or Marshall. Neither did the division send to appellant any notice of the filing of the respective claims of Grenke and Marshall such as is now specifically required under the 1941 amendment. In seeking to justify its failure to send these notices, the division relies on Mason St. 1940 Supp. § 4337-28B, which provides, *inter alia:*

"The [industrial] commission may dispense with giving notice [of its determination on the employe's claim] to any such party, parties, or employing unit and such party, parties, or employing unit shall not be entitled to such notice, if it has either (1) in writing waived notice, or (2) failed to indicate prior to the determination, if and as required by regulations of the commission, that the claimant may be disqualified for such benefits. Unless the claimant or such other interested party, parties, or employing unit or units within ten calendar days after the delivery of

such notification, or within 12 calendar days after such notification was mailed to his last known address, files an appeal from such decision, such decision shall be final and benefits shall be paid or denied in accordance therewith."

At the respective *ex parte* hearings on the Grenke claim and the first Marshall claim, the division construed and gave effect to regulation 15 as creating a conclusive presumption or admission that these employes were not disqualified for benefits, and allowed the claims. Similarly, at the *ex parte* hearing on the second Marshall claim, the division gave effect to regulation 16 as creating a conclusive admission by the employer that the employe "was separated from * * * [her] employment under conditions which would not disqualify * * * [her] for benefits" and as creating an estoppel against the employer "from protesting * * * the effect of payment of such benefits on his experience ratio used in determining his future contribution rates based on benefit experience."

Social security legislation came to America during an unprecedented period of national depression as a great social experiment. It was accepted by employers throughout the nation, though not without some misgivings and protest. Even before the enactment of the legislation, many employers had developed or adopted systems whereby losses to wage earners through unemployment were very substantially reduced, if not entirely eliminated. Other employers, not so socially minded, made no attempt to adopt plans to alleviate and curb the hardships of unemployment. It was with a view to encouraging the former type of employer and discouraging the latter that the present system of merit rating was evolved by the legislature. One of the expressed legislative purposes was "encouraging employers to provide more stable employment." Minn. St. 1941, § 268.03 (Mason St. 1940 Supp. § 4337-21). The director and his subordinates, to whom the administration of the law has been delegated, should make every reasonable effort to carry out this legislative intent by giving proper credit to the employer who has justly earned a merit rating. Unless such

course is unavoidable, they should not, by such drastic regulations and interpretations thereof as are here invoked, destroy the incentive of deserving employers. The effect of the regulations as here interpreted is to deny to an employer what he has fairly earned, and this solely because he has, either intentionally or through oversight, failed to comply with a relatively unimportant regulation of the director.

As said by Chief Justice Hughes in Morgan v. United States, 304 U. S. 1, 22, 58 S. Ct. 773, 778, 999, 82 L. ed. 1129, 1134:

"The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, * * * if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."

With the same thought in mind, this court, in State ex rel. Young v. Brill, 100 Minn. 499, 502, 111 N. W. 294, 639, 640, 10 Ann. Cas. 425, said:

"The tendency to sacrifice established principles of constitutional government in order to secure centralized control and high efficiency in administration may easily be carried so far as to endanger the very foundations upon which our system of government rests."

So in Rockne v. Olson, 191 Minn. 310, 313, 254 N. W. 5, 7, speaking of executive and administrative officials, this court again said:

"Within the constitutional limits of their jurisdiction they have an independence of official action no less complete and no less important than that of the judiciary. But when litigation properly presents a question whether proposed administrative action

of an executive or administrative official is within the law, constitutional or statutory, both the subject of inquiry and the duty of decision are at once and automatically removed from the field of executive to that of judicial action and duty. * * * No proposition is more thoroughly settled in the jurisprudence of both the United States and England."

It may be conceded that the language of Mason St. 1940 Supp. § 4337-28B, above quoted, not only grants legislative sanction to, but even suggests, the promulgation by the commission or director of a rule dispensing with notice of the determination on an employe's application for benefits to an employer who has failed to give the required separation notice. The instant case, however, presents the further and more fundamental question: Could the legislature, without violating the due process clauses of the state and federal constitutions, delegate to the commission or director the power to make a binding determination of the employer's contribution rate without affording the employer an opportunity to be heard and to show the actual facts bearing upon such rate? If such power did not exist, it will not be presumed that the legislature intended to grant it.

Even the legislature itself does not have the power to declare what shall be conclusive evidence contrary to the fact. County of Blue Earth v. National Surety Co. (concurring opinion) 164 Minn. 390, 205 N. W. 277; Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 A. S. R. 663; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. ed. 557, 43 A. L. R. 1224; People ex rel. Hillel Lodge v. Rose, 207 Ill. 352, 69 N. E. 762; Cairo & F. R. Co. v. Parks, 32 Ark. 131; McGrew v. Industrial Comm. 96 Utah 203, 85 P. (2d) 608; note, 2 Cooley, Const. Lim. (8 ed.) p. 767.

"The legislature cannot in this manner provide for the arbitrary exercise of power, so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law

which deprives him of his day in court." Vega Steamship Co. v. Consolidated Elev. Co. 75 Minn. 308, 312, 77 N. W. 973, 974, 43 L. R. A. 843, 74 A. S. R. 484.

Clearly, what the legislature cannot do itself is *ultra vires* an administrative body with only delegated legislative power. Even such body's exemption from strict legal rules of evidence and procedure will not empower it to act arbitrarily and to substitute a presumption for a fact. To deny an employer, either by statute or administrative regulation, the privilege of proving that the fact basis upon which his "beneficiary wage ratio" is to be determined is false is, to borrow from Cairo & F. R. Co. v. Parks, 32 Ark. 131, 145, *supra,* "in effect, manufacturing falsehood into truth, or giving to falsehood the validity and effect of truth."

Unquestionably the legislature, or its administrative adjunct, may declare that certain things shall constitute *prima facie* evidence or create a rebuttable presumption. "That is but shifting the burden of proof." County of Blue Earth v. National Surety Co. 164 Minn. 390, 400, 205 N. W. 277, 281, *supra;* and see Mobile J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. ed. 78, 32 L.R.A.(N.S.) 226, Ann. Cas. 1912A, 463. So here, had the division interpreted its regulations as permitting the admission of or estoppel against the employer to create only a *prima facie* case, such interpretation would readily have been sustained here. But such was not the case. Instead, there was an arbitrary refusal to permit any proof of the actual facts, merely because of the failure of the employer to give the required notice of separation. This is not the type of "fair play" which administrative tribunals must afford the employer as well as the employe.

In addition to being consistent with law, regulations to be valid must be reasonable. 11 Am. Jur., Const. Law, p. 958, § 240; International Ry. Co. v. Davidson, 257 U. S. 506, 514, 42 S. Ct. 179, 66 L. ed. 341, 346; Manhattan G. E. Co. v. Commr. of Int. Rev. 297 U. S. 129, 134, 56 S. Ct. 397, 80 L. ed. 528.

The due process of law clauses of our state and federal constitutions are "standing guarantee[s] of substantial justice, and pre-

vent such caprice or arbitrary action as would prevent a litigant from having a substantially fair trial. The requirement of due process means opportunity for a hearing, *i. e.*, opportunity to be present during the taking of testimony or evidence, to know the nature and contents of all evidence adduced in the matter, and to present any relevant contentions and evidence the party may have. In other words, that the party have his 'day in court.' * * * While a statute may confer upon an administrative board exemption from rules of evidence or procedure, it cannot authorize exemption from the due process clause, which is a permanent safeguard against the recurrence of abuses such as characterized the Court of 'Star Chamber.' " Pillsbury, "Administrative Tribunals," 36 Harv. L. Rev. pp. 587, 588.

The observance of the constitutional "due process" requirement is as important in administrative law as elsewhere, for, as said by Mr. Chief Justice Hughes in Morgan v. United States, 304 U. S. 1, 14, 58 S. Ct. 773, 775, 999, 82 L. ed. 1129, 1130, *supra:*

"The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing'—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' "

Notice and an opportunity to be heard are universally recognized as essential to due process. A fair hearing is a fundamental requisite. Mixed Local of H. & R. Emp. Union v. Int'l Alliance, 212 Minn. 587, 597, 4 N. W. (2d) 771; Tomasko v. Cotton, 200

Minn. 69, 273 N. W. 628, and cases cited. And see McGrew v. Industrial Comm. 96 Utah 203, 85 P. (2d) 608.

"There must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them." Morgan v. United States, 304 U. S. 1, 23, 58 S. Ct. 773, 999, 1000, 82 L. ed. 1129, *supra.*

The duty to determine an employer's contribution rate is widely different from ordinary administrative action. It is comparable to the duty of the federal secretary of agriculture to fix stockyard rates, as to which the Chief Justice said, in Morgan v. United States, 298 U. S. 468, 480, 56 S. Ct. 906, 911, 80 L. ed. 1288:

"It is a duty which carries with it fundamental procedural requirements. There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact. Nothing can be treated as evidence which is not introduced as such. * * * Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances must not be considered which should not legally influence the conclusion. Findings based on the evidence must embrace the basic facts which are needed to sustain the order."

The instant case provides an excellent illustration of the arbitrariness and oppressiveness which invalidates any administrative rule or proceeding. The director here proposes to substitute for the "rudimentary requirements of fair play" the obsolete doctrine of *lèse majesté.* By denying the employer the fundamental right to be heard, the director has nullified his entire investigation and determination of the contribution rate to be paid by the appellant.

In the light of these many authorities, there can be but one conclusion here, to-wit: Regulations 15 and 16 as interpreted by the director are invalid not only because they are inconsistent with the employment and security act but because they deny due process of law.

In reaching this conclusion we have not overlooked the director's argument that to deny his regulations the force he so devoutly wishes "would seriously jeopardize the administration of the employment and security program." How? Because the director "would be compelled to personally notify most recent employers of the filing of claims for benefits even in absence of a separation notice from such employer or accept collateral attacks on benefit determinations." But why not? If, as the director argues, it is reasonable to ask the employer to send a notice of separation to the division, why should it be unreasonable to ask the director to notify the employer of a claim for benefits? By the simple expedient of requiring these claimants to disclose the identity of their most recent employers, the director can obtain all information necessary for the notices. The prospect that the limitations we place upon the rule-making power of the director will work serious inconvenience in the administration of the act and will put an unbearable burden upon the director does not justify the denial of a fair hearing on the merits in each case presented to him. Arizona Grocery Co. v. A. T. & S. F. Ry. Co. 284 U. S. 370, 52 S. Ct. 183, 76 L. ed. 348. Rights guaranteed by the constitution are not to be so lightly treated; they are superior to the convenience and supposed necessity of the director. Due process of law cannot be denied for any purpose whatsoever. Schlesinger v. Wisconsin, 270 U. S. 230, 240, 46 S. Ct. 260, 70 L. ed. 557, 43 A. L. R. 1224.

As well said by Mr. Justice Stone in Bielke v. American Crystal Sugar Co. 206 Minn. 308, 312, 288 N. W. 584, 586:

"Substantive law is one thing; procedural law another. In new and remedial legislation, the two normally go together. But the procedural does not, unless so stated or plainly implied, qualify or limit the substantive. Rather, its only purpose is, by implementation, to make the whole thing work."

Nor have we overlooked the director's argument, also based on § 4337-28B, to the effect that, no appeal having been taken

from the separate decisions awarding benefits to the employes Grenke and Marshall, such decisions became "final" and cannot be attacked collaterally. If the employer had been a party to the proceedings, this would be true beyond question; but, not being a party thereto, it is fundamental that he could not be bound thereby (Stevens v. Minneapolis F. D. R. Assn. 124 Minn. 381, 145 N. W. 35, 50 L.R.A.[N.S.] 1018). And any legislative attempt to "dispense with giving notice * * * to any * * * employing unit" is as vulnerable to the charge that it deprives the employer of a hearing and therefore of due process of law as are regulations 15 and 16, adopted pursuant thereto. The requirement of due process is a constitutional one and cannot be waived or "dispensed with" either by the legislature or by an executive tribunal to which it delegates the duty of administering a law.

In view of the arbitrary and erroneous theory upon which the director proceeded, his decision must be set aside, with directions to determine appellant's 1941 contribution rate in conformity with this decision.

Reversed.

PIRSIG, JUSTICE (dissenting).

The terms of the unemployment compensation act as it stood when the facts here controlling arose make it evident that it was the intention of the legislature that an employer who fails to give notice of an employe's disqualification for benefits when required by the industrial commission should not be permitted to question the charging of his account when the employe was granted benefits, and this notwithstanding that the employer, through his own failure to give notice of the disqualification, had not been notified of the proceedings by which the employe's rights to benefits were determined. Mason St. 1940 Supp. § 4337-28B, at that time provided that the commission might require notice from the employer of an employe's disqualification for unemployment benefits. It also provided expressly that if such notice was not given when required the employer need not be notified of the proceeding by which the employe was granted his benefits. It provided further

that upon a decision being made in proceedings brought by the employe for benefits where no appeal was taken the benefits determined to be due should be paid. *Id.* § 4337-24C, subd. 3, provided:

"The total 'beneficiary wages' of any employer for a given calendar year shall be the total of the beneficiary wages * * * paid or payable by him for employment to all of his employees *and former employees who commenced a benefit year and to whom benefits are paid or payable in such calendar year.*" (Italics supplied.)

Under this section no discretion is left to the director to exclude the wages of a former employe to whom benefits have been paid pursuant to a determination made without notice to the employer as contemplated by *Id.* § 4337-25. On the contrary, the legislation evidences an intention that they shall be included in determining the employer's rate of contribution.

It is difficult to suppose that the legislature intended anything else. To hold otherwise and to permit only a *prima facie* effect to be given to the failure of the employer to give notice of disqualification and to the subsequent determination is to render largely nugatory the express statutory provision authorizing the commission to require it and eliminating the need for notice to an employer failing to give it.

The requirement that such a notice be given is not so unreasonable that it violates the constitutional requirement of due process. It is at the termination of the employment that the facts relating thereto are fresh in everyone's mind. As this case shows, the commission might not be presented with the case until a much later date. The legislature might properly believe that unless such a notice was given as was here required, the commission might not be able to obtain the needed information when the case comes before it. In Farrell v. Unemployment Comp. Bd. of Review, 144 Pa. Sup. 365, 19 A. (2d) 522, 523, the court said:

"In our opinion, the best possible proof is the filing of a claim immediately after the week of unemployment when the dates there-

of are fresh in the mind of the claimant. If other types of proof were permitted it frequently would be furnished, as in this case, long after the particular week of unemployment when the dates may not be clear in the mind of the claimant, and when it is impossible to obtain accurate proof from other sources. If proof of unemployment for any week were to be accepted at any time after the expiration of said week, the chances of obtaining reliable proof would, in all probability, vary directly with the amount of time elapsed."

It is no more unreasonable in this case to require the employer to give notice as a condition to his right to deny compensation benefits.

It is well settled that an administrative agency may be authorized to require reports to be made to it by those engaged in the particular business being supervised. 42 Am. Jur., Public Administrative Law, p. 324, § 32. A statute requiring such a report to be made in unemployment compensation cases and imposing criminal liability for failure to comply has been upheld. See State v. Proctor, 91 N. H. 347, 18 A. (2d) 753. To render such a requirement effective by imposing a criminal liability is a common provision. It has been resorted to in the present act. Mason St. 1940 Supp. § 4337-30H, expressly authorized the commission to "require from any employing unit any sworn or unsworn reports, with respect to persons employed by it, which the commission deems necessary for the effective administration of this Act." And it further provided that "any individual who violates any provision of this subsection shall be subject to the penalties provided for in this act." *Id.* § 4337-36 provides for penalties and makes a violation of any provisions of the act a misdemeanor.

In addition, with respect to the failure to give notice of disqualification, the employer forfeits his right to question the charging of his account by reason of benefits paid. A case indistinguishable from the present one is Maine Unemployment Compensation Comm. v. Androscoggin Junior, Inc. 137 Me. 154, 16 A. (2d) 252. In that case during the year 1937 the employer had more than eight employes and he therefore came under the act. In the fol-

lowing year his employes numbered less than eight, and he did not come within its provisions. However, the act provided that in that event his status as an employer under the act would continue nevertheless unless he gave notice of termination, and, in the absence thereof, he would continue subject to the payment of the unemployment compensation benefits. The court held this a reasonable and proper provision, stating (137 Me. 160, 16 A. [2d] 255):

"It is somewhat analogous to the statutory duty placed upon inhabitants to make and bring in true and perfect lists of their taxable estates else be barred from making application to the assessors or county commissioners for abatement of taxes. * * * Considering the beneficial effect of this carry-over provision in simplifying and lessening the work of the commission without unduly burdening the employer and at the same time giving it full protection, we hold the statute is reasonable and unobjectionable."

See also Webb v. State (Tex. Civ. App.) 156 S. W. (2d) 557. So here, the consequence of not giving notice is to treat the disqualified employe as though he were qualified, subject to the contingency that the director so determine. The only difference is that in the Maine case the liability became absolute, whereas in the present case under the Minnesota law the right to benefits and the consequent charging of the employer's account is dependent upon a determination by the director. The difference is one in favor of the Minnesota act insofar as its validity is concerned.

To insist that the employer must have notice before that determination can affect him is to invoke the analogy of judicial procedure in a situation where it is wholly inapplicable. As the Androscoggin case (137 Me. 154, 16 A. [2d] 252), so clearly shows, the liability could have been imposed on the employer's account without any determination in a proceeding by the employe. Surely the imposition is no less valid merely because proceedings, interposed to determine the employe's right to benefits,

make it less likely that the employer will be subjected to the imposition.

The substance of the statute and of regulation 16 being valid under this view of the case, it is no objection so far as due process is concerned that the requirement imposed is put in procedural terms of estoppel or admission of fact. Stating effects in terms of admissions is not uncommon even in judicial procedure. Failure to deny allegations in a complaint constitutes an "admission" of them. A demurrer "admits" facts well pleaded, etc. No one has suggested that this violates due process.

Even assuming that the case involves the validity of a quasi judicial administrative proceeding, a fair opportunity to be heard was afforded the employer. He need only have observed the simple expedient of notifying the commission of the employe's disqualification. Had such a notice been given, the employer would have been fully protected, since he in turn would have been notified under the law when application for benefits was made. To condition the right to notice to a hearing upon giving of such notice cannot be said to be so unreasonable and oppressive as to violate the requirements of due process. Pittsburgh P. G. Co. v. National L. R. Board, 313 U. S. 146, 51 S. Ct. 908, 85 L. ed. 1251. As already stated, other than the employe himself, the employer is the one person most likely to know the conditions under which the employe left his employment, and he is therefore in a position where notice thereof can easily be given. The question is not what we might prescribe, were we the legislature, but rather whether the procedure now prescribed is so unreasonable that the minimum requirements of due process have not been met. Due process is not identical with judicial process, and opportunity to be heard may properly be afforded by other methods than those developed as an incident to the adversary method of judicial procedure. The legislature is entitled to full opportunity to prescribe administrative practices and procedures and, by the test of experience, arrive at those which are workable and just. That it may be trusted to exercise its powers in

this respect with judgment and wisdom is, perhaps, exemplified by the fact that the provisions here under consideration were later repealed.

For these reasons I am of the opinion that the director's decision should be affirmed.

HENRY M. GALLAGHER, CHIEF JUSTICE (dissenting).
I concur in the dissent.

PETERSON, JUSTICE (dissenting).
I concur in the dissent.

